Wayne FANSELOW, as Personal Representative of the Estate of Elsie Fanselow; Wayne Fanselow; Meredith Nelson; Janet Werkman, and David Nova, Plaintiffs,

v.

Cory Wayne RICE and Transport Company of America, Inc., d/b/a Transport America, Defendants.

No. 4:02CV3019.

United States District Court, D. Nebraska.

July 30, 2002.

Gerald L. Jorgensen, Jorgensen, Pepin Law Firm, Longmont, CO, for plaintiffs.

Stephanie F. Stacy Baylor, Evnen Law Firm, Lincoln, NE, Jack McKinley, Ramey, Chandler Law Firm, Houston, TX, for defendants.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION TO DETERMINE CHOICE OF LAW REGARDING PUNITIVE DAMAGES

URBOM, Senior District Judge.

This case is now before me on the plaintiffs' Motion to Determine Choice of Law Regarding Punitive Damages, filing 11. In their motion, the plaintiffs urge me to conclude that (1) the punitive damage laws of either Minnesota or Texas apply to the claims against the defendant Transport Company of America, Inc., d/b/a Transport America (hereinafter Transport America), and (2) the punitive damages laws of either Oregon or Texas apply to the claims against the defendant Cory Wayne Rice.

See Mot. to Determine Choice of Law Regarding Punitive Damages ¶ 4 (filing 11). In response, the defendants contend that Nebraska's prohibition on punitive damages should govern this case. After reviewing the submissions of both parties, I find that with respect to the issue of punitive damages, the law of Minnesota will apply to the claims against the defendant Transport America, and the law of Oregon will apply to the claims against the defendant Rice.

### I. Background

This case arises from a motor vehicle accident that occurred a few miles west of Lincoln on August 3, 2000. The collision involved a car operated by the plaintiff Wayne Fanselow and a tractor-trailer operated by the defendant Cory Wayne Rice "while in the course and scope of his employment with [the defendant] Transport America." Answer ¶ 4 (filing 10).[1] Both Wayne Fanselow and his passenger, his mother Elsie Fanselow, suffered significant injuries in the accident. Elsie Fanselow died on December 2, 2000.

Prior to her death, Elsie Fanselow was a citizen of Colorado. The plaintiff Wayne Fanselow is also a citizen of Colorado. The remaining plaintiffs, Meredith Nelson, Janet Werkman, and David Nova, are the adult children of Elsie Fanselow and are citizens of Colorado, Massachusetts, and California respectively. The defendant Transport America is incorporated under the laws of Minnesota with its principal place of business in Minnesota. At the time of the accident, the defendant Rice was a citizen of Texas, but he has since relocated to Oregon.

On July 30, 2001, the plaintiffs filed suit in the United States District Court for the

---

1. Two other vehicles were also involved in the collision. *See* Investigator's Motor Vehicle Accident Report (filing 3 at Attach. 2).

Eastern District of Texas, alleging both diversity and federal question jurisdiction. The defendants then moved for a change of venue. According to the defendants, venue was improper in Texas under 28 U.S.C. § 1391(a) because the defendant Rice did not reside in Texas when the suit was filed. *See* Mot. for Change of Venue Pursuant to 28 U.S.C.A. Section 1404(a) at 3–4 (filing 3). In response, the plaintiffs apparently filed a Confession of Motion for Change of Venue, in which they conceded that because the defendant Rice no longer resided in Texas when the complaint was filed, "venue does not lie in the Eastern District of Texas and the only other viable venue would lie in the United States District Court for Nebraska." Defs.' Br. in Opp. to Pls.' Mot. to Determine Choice of Laws Regarding Punitive Damages [hereinafter Defendants' Brief] at Attach 1. Noting that "[t]he plaintiff[s] do[ ] not contest that venue is improper in this court," United States District Judge T. John Ward granted the defendants' motion and transferred the case to Nebraska. Order Transferring Venue (filing 5).

Based on their planning conference report, the parties appear to agree that Nebraska law governs almost all of the issues presented in this case, with one notable exception—the recovery of punitive damages. *See* Report of Parties' Planning Conference (filing 14). Such damages are the subject of the motion now at issue.

## II. Analysis

### A. *Basis for Transfer*

■ When a diversity case is transferred under the venue statutes, "the choice of law depends on the nature of the transfer." *Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 735 (8th Cir.1997). If a case is transferred pursuant to 28 U.S.C. § 1404(a), "for the convenience of parties [and] in the interest of justice," the transferee court generally applies the law of the transferor court, including the relevant choice-of-law provisions, as if no change of venue had occurred. 28 U.S.C. § 1404(a); *see Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (holding that, following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court); *Ferens v. John Deere Co.*, 494 U.S. 516, 531, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990) (concluding that the same rule applies when the transfer is initiated by the plaintiff). By contrast, when an action is transferred pursuant to 28 U.S.C. § 1406(a), the improper venue statute, the transferee court must apply the law it would have applied had the action been brought there initially. *See Wisland*, 119 F.3d at 736.

■ According to the plaintiffs, Texas' choice-of-law provisions should apply in this case. In support of their claim, the plaintiffs direct me to the defendants' motion to transfer venue, which refers to § 1404(a) as the basis for transfer. *See* Mot. for Change of Venue Pursuant to 28 U.S.C.A. Section 1404(a) (filing 3). In response, the defendants contend that "the plaintiffs' reliance on the case law applicable to § 1404(a) is misplaced," as "[i]t is clear that while the Motion to Change Venue recited reference to § 1404(a), the request was based on the argument that venue was improper in Texas." Defendants' Brief at 4 (citation omitted). I am inclined to agree with the defendants.

In the brief supporting their motion to change venue, the defendants argued that (1) venue was improper in the Eastern District of Texas, and (2) § 1404(a) required a transfer to this court. *See* Mot. for Change of Venue Pursuant to 28 U.S.C.A. Section 1404(a) at 3–11 (filing 3). In responding to the defendants' venue motion, the plaintiffs conceded that venue

was improper in Texas. *See* Defendants' Brief at Attach 1. Judge Ward, in his order transferring the case, did not cite a statutory basis for the transfer; instead, he simply noted that "[t]he plaintiff[s] do[ ] not contest that venue is improper in this court." Order Transferring Venue (filing 5). My own review of the relevant statutory provision persuades me that the case was properly transferred pursuant to § 1406(a).

■ The substantive standard for analyzing the propriety of venue is found in 28 U.S.C. § 1391. According to this statute, venue in diversity cases is proper in the following locations:

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).[2] Under this standard, venue was not proper in the Eastern District of Texas. As noted above, the defendant Rice was not a resident of Texas at the time the action was commenced, thus rendering § 1391(a)(1) inapplicable. Nor was § 1391(a)(2) applicable, as it does not appear that "a substantial part of the events ... giving rise" to this suit occurred in Texas. Finally, § 1391(a)(3) does not render Texas a proper forum, as there was a district "in which the action may otherwise be brought"—Nebraska, where the car accident occurred. Thus,

for the reasons outlined above, I agree with the defendants that "regardless of the statutory reference in the defendants' Motion to Change Venue, this case was transferred from Texas to Nebraska because venue was improper in Texas." Defendants' Brief at 7; *see also Wisland v. Admiral Beverage Corp.*, 119 F.3d 733, 736 (8th Cir.1997) (noting that "neither the signed stipulation nor the district court order indicates which type of transfer was contemplated nor specifies which state law controls" and, after analyzing § 1391(a), concluding that "the transfer had to have been under 28 U.S.C. § 1406(a)," as venue was improper in the transferor court); *Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir.1993) ("Although the district court in Illinois purported to transfer the case under § 1404(a) for the convenience of the parties, its characterization of the transfer is not controlling."). Accordingly, I will look to the law of Nebraska, the transferee court, for the applicable choice-of-law provisions.

### B. *Choice–of–Law Provisions*

■ The parties appear to agree that Nebraska has adopted the "most significant relationship" test, as set forth in the Restatement (Second) of Conflict of Laws, to resolve choice-of-law issues in tort cases. *See* Br. on Choice of Law Regarding Punitive Damages [hereinafter Plaintiffs' Brief] at 4; Defendants' Brief at 8; Pls.' Reply Br. in Supp. of Pls.' Mot. to Determine Choice of Law Regarding Punitive Damages [hereinafter Plaintiffs' Reply] at 2; *see also Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 312 (8th Cir.1991) ("In contract and tort cases, Nebraska courts have adopted the 'most sig-

---

**2.** This subsection of § 1391 applies to cases where jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1391(a). Subsection (b) applies where jurisdiction "is not founded solely on diversity of citizenship...." *Id.*

§ 1391(b). In their complaint, the plaintiffs allege both diversity and federal question jurisdiction. However, it appears to me that under either § 1391(a) or § 1391(b), venue was not proper in Texas.

nificant relationship' approach of the Restatement (Second) of Conflict of Laws (1971) ...." (citation omitted)). Under this test, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971). Section 6, in turn, lists several factors relevant to the choice-of-law analysis:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Id.* § 6(2). In section 145, the Restatement outlines various "contacts" that should be considered "in applying the principles of § 6 to determine the law applicable to an issue," including the following:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Id.* § 145(2); *see also id.* § 171 ("The law selected by application of the rule of § 145 determines the measure of damages.").

## C. *Application of "Most Significant Relationship" Test*

The plaintiffs contend that "states with prohibitions on punitive damages have no interest in [the] application of their laws to out-of-state defendants...." Plaintiffs' Brief at 5. According to the plaintiffs, the policies of such states "are advanced when businesses are encouraged to locate and do business within these states due to their economic advantages such as lower insurance premiums." *Id.* Thus, the plaintiffs argue, "Nebraska has no interest in applying its punitive damages laws to these defendants," as neither of the defendants is a citizen of Nebraska and the only connection between the defendants and Nebraska is that the accident occurred there. Plaintiffs' Brief at 5–6.

The plaintiffs then direct me to the law of Minnesota and the law of Oregon, both of which permit punitive damages.[3] According to the plaintiffs, the policies of .these states are advanced "when defendants with significant contacts to them are punished for and deterred from bad behavior." *Id.* at 5. Here, the plaintiffs note, Minnesota is the state of incorporation and the principal place of business of the defendant Transport America, while Oregon is the state where the defendant Rice is currently domiciled. Thus, the plaintiffs argue, these states have the "most significant relationship" to the accident and the parties with respect to the issue of punitive damages. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971). The plaintiffs therefore argue that Minnesota's

---

**3.** In the alternative, the plaintiffs contend that the law of Texas should govern the issue of punitive damages. However, because I agree that with respect to this issue, the laws of Minnesota and Oregon have "the most significant relationship" to the accident and the parties, I need not reach this alternative argument.

punitive damage laws should apply to the claims against the defendant Transport America, and Oregon's punitive damage laws should apply to claims against the defendant Rice.

In response, the defendants contend that Nebraska has the "most significant relationship" to the case with respect to the punitive damages issue. To support their claim, the defendants direct me to *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307 (8th Cir.1991). In *Enron*, the Eighth Circuit concluded that the district court did not err in applying Nebraska's choice-of-law rules and finding that an insured mortgagee's claim for punitive damages against a title insurer was governed by Nebraska law, rather than the law of the Virgin Islands where the mortgage foreclosure took place. *See Enron Corp.*, 940 F.2d at 313. After noting the Restatement factors outlined above, the court stated the following:

> Certainly some of the contacts enumerated in § 145(2) support the application of Virgin Islands law. Some also support the application of Nebraska law. Ultimately, we agree with the district court that the relevant policies of Nebraska and the Virgin Islands are the proper focal points of this inquiry. The Nebraska policy is clear: "[P]unitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction." ... Enron adduces no such specific expression of support for the Virgin Islands' policy of permitting punitive damages. Indeed, we note that the Virgin Islands permits punitive damages only because such damages are provided for in § 908 of the Restatement (Second) of Torts (1977).... Although the Virgin Islands certainly has an interest in punitive damages in this case, we do not believe it is a very strong one. Therefore, balancing Nebraska's clear constitutional prohibition against the Virgin

Islands' adoption of the Restatement's position, we conclude that Nebraska has the most significant relationship to this case with respect to the issue of punitive damages, and that the district court thus properly struck Enron's claim for such damages.

*Id.* (citations and notes omitted); *see also id.* at 310 ("Where there is no governing statute, Virgin Islands law 'directs us to examine the common law, first as expressed in the Restatements, and then as generally understood and applied in the United States.'" (citation omitted)). Relying on this language, the defendants assert that "[I] must examine the policies behind Nebraska's ban of punitive damages and compare them to the policies of Minnesota and Oregon allowing punitive damages" in order to resolve the conflict-of-laws issue. Defendants' Brief at 10 (note omitted).

In conducting this analysis, the defendants first note that, "much like the *Enron* case," many of the Restatement factors support the application of Nebraska law, other factors arguably support the application of Minnesota and Oregon law, and still other factors do not support one state's law over another. *Id.* at 10–11. Thus, the defendants argue, "the 'proper focal point[]' of the inquiry is the relative strength or weakness with which the punitive damage laws of the states are asserted in relation to one another." *Id.* at 11 (brackets supplied) (quoting *Enron*, 940 F.2d at 313). According to the defendants, "it is clear that Minnesota's relationship to the punitive damages issues is subordinate to Nebraska's," as "Minnesota has not embraced recovery of punitive damages with the same fervor with which Nebraska opposes it." *Id.* at 12. The defendants note that "Nebraska believes so strongly that punitive damages should *not* be allowed that such damages have been held to contravene the Nebraska Constitution." *Id.* (emphasis in original) (citations omitted).

Minnesota, on the other hand, "[l]ike the Virgin Islands in *Enron* [,] . . . has merely followed the Restatement (Second) of Torts (1977) approach to punitive damages as they pertain to recovery of punitive damages against an employer for acts of its employee." *Id.* (citing *Tennant Co. v. Advance Mach. Co., Inc.*, 355 N.W.2d 720, 723 (Minn.Ct.App.1984) (recognizing that § 549.20, subd. 2 of the Minnesota Code merely codifies the standard set forth in § 909 of the Restatement (Second) of Torts regarding the circumstances under which punitive damages may be imputed to a principal for the acts of its agent)). In addition, the defendants observe that in recent years, Minnesota has limited the availability of punitive damages. *Id.* at 12–13. The defendants therefore conclude that "Nebraska has a more significant relationship to the issue of punitive damages than does Minnesota," because "Nebraska law 'disfavors' punitive damages much more strongly than Minnesota law 'favors' punitive damages." *Id.* at 14 (citing *Enron*, 940 F.2d at 313).

The defendants advance a similar argument with respect to the application of Oregon's law regarding punitive damages. While noting that Oregon permits the recovery of punitive damages, the defendants assert that "like Minnesota, Oregon restricts by statute both the amount of such recovery, and the circumstances under which one may seek punitive damages." *Id.* (citations omitted). Thus, the defendants conclude that "the enthusiasm with which punitive damages are permitted in Oregon is not as striking as the unwavering prohibition of punitive damages under Nebraska law." *Id.* at 15.

After reviewing the arguments outlined above, I am inclined to agree with the plaintiffs' analysis. I turn first to the factors outlined in § 6 of the Restatement. It seems to me that at least two of these factors—"the needs of the interstate and international systems" and "the protection of justified expectations"—appear to be neutral in that they do not seem to support the application of one state's law over another. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(a), (d) (1971); *see also id.* cmt. g ("There are occasions, particularly in the area of negligence, when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations to protect, and this factor can play no part in the decision of a choice-of-law question."). With respect to the last two factors in § 6—"certainty, predictability and uniformity of result," and "ease in the determination and application of the law to be applied"—the defendants contend that both weigh in favor of applying Nebraska's law. *Id.* § 6(2)(f), (g). According to the defendants, "Nebraska's law on awarding punitive damages is very easily determined and applied: punitive damages are prohibited," while Minnesota's and Oregon's punitive damage provisions require "highly individualized [and] multi-factored" inquiries. Defendants' Brief at 18, 17. Thus, the defendants conclude, these last two factors "clearly favor application of Nebraska law." *Id.* at 17. I am not entirely persuaded. I agree that Nebraska's law regarding punitive damages is easily determined and applied. However, the laws of Minnesota and Oregon are also easily determined, and it does not seem to me that such laws are particularly difficult to apply. Nor does it seem to me that "certainty, predictability and uniformity of result" should tip the balance in favor of Nebraska's law. *See, e.g.*, RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 cmt. i (1971) ("Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions. . . . Uniformity of result

is also important when the transfer of an aggregate of movables, situated in two or more states, is involved."). Thus, it seems to me that the last two factors in § 6 are relatively neutral or weigh only slightly in favor of applying Nebraska's law with respect to the issue of punitive damages.

The analysis above leads me to agree with the defendants that in this case, "the proper focal points" of the choice-of-law inquiry are the relevant policies of Nebraska, Minnesota, and Oregon, as well as the basic policies underlying the law of punitive damages. *Enron Corp. v. Lawyers Title Ins. Corp.*, 940 F.2d 307, 313 (8th Cir.1991); *see* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2)(b), (c), (e) (1971). In analyzing these factors, I will also consider those "contacts" that are outlined in § 145(2) of the Restatement.

Initially, however, I turn to the defendants' interpretation of the *Enron* decision. As the plaintiffs note in their reply brief, the defendants seem to cite *Enron* for the following proposition: jurisdictions that merely adopt the Restatement on the issue of punitive damages have less of an interest in the policies underlying this issue than jurisdictions that either have not adopted the Restatement or jurisdictions that have prohibited punitive damages. *See* Plaintiffs' Reply at 2. I agree with the plaintiffs that the defendants have interpreted *Enron* too broadly. As indicated above, the *Enron* panel noted that "[w]here there is no governing statute, Virgin Islands law 'directs us to examine the common law, first as expressed in the Restatements, and then as generally understood and applied in the United States.'" *Enron*, 940 F.2d at 310 (quoting *Polius v. Clark Equip. Co.*, 802 F.2d 75, 77 (3d Cir.1986)). Thus, according to the plaintiffs:

> [I]t appears that the Virgin Islands, having been silent on the issue of punitive damages, adopts the Restatement by de-

fault. It was in this context, with the Virgin Islands not having actually adopted the Restatement specifically, that the court concluded that Nebraska's prohibition on punitive damages showed a stronger interest in the issue than the Virgin Islands, all other factors being equal.

Plaintiffs' Reply at 3. It seems to me that the plaintiffs' interpretation is reasonable, and I therefore agree with the plaintiffs that Minnesota's adoption of the Restatement's approach regarding punitive damages does not discount its interest in applying its punitive damages provisions in this case.

■ Next, I turn to the "contacts" outlined in § 145(2) of the Restatement. The stated purposes of punitive damages generally include (a) punishment or retribution, and (b) deterrence. *See* 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES § 311(1), at 453 (2d ed.1993). Thus, I am inclined to agree with the plaintiffs that "'[t]he only jurisdictions concerned with punitive damages are those ... with whom the defendants have contacts significant for choice of law purposes.'" Plaintiffs' Brief at 5 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 580 F.Supp. 690, 705–706 (E.D.N.Y. 1984)); *see also In re "Agent Orange"*, 580 F.Supp. at 705 ("The states of the [plaintiffs'] domicile do not have an interest in whether or not punitive damages are imposed on the defendants."); *Keene Corp. v. Insurance Co.*, 597 F.Supp. 934, 938 (D.D.C.1984) ("The State of domicile of plaintiff has no interest in imposing punitive damages. 'The legitimate interests of [plaintiffs' domiciliary] states, after all, are limited to assuring that the plaintiffs are adequately compensated for their injuries.'" (citation omitted)). In this case, it appears that those jurisdictions include Nebraska, where the injury occurred and where the majority of the conduct causing

the injury occurred;[4] Minnesota, the state of incorporation and principal place of business of the defendant Transport America; and Oregon, the current domicile and residence of the defendant Rice. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(a), (b), (c) (1971).[5]

After considering these contacts and the policies underlying the law of punitive damages, I am persuaded that, with respect to the issue of punitive damages, Minnesota law should govern the claims against the defendant American Transport and Oregon law should govern the claims against the defendant Rice. According to the plaintiffs, the purpose of prohibiting punitive damages is to protect resident defendants from "excessive financial liability." Plaintiffs' Brief at 5 (citing *In re "Agent Orange" Prod. Liab. Litig.*, 580 F.Supp. 690, 706 (E.D.N.Y.1984) ("The purpose underlying the disallowance [of punitive damages] is protection of defendants from excessive financial liability." (citations omitted))). In addition, the plaintiffs note that "[s]uch protection is thought to encourage entrepreneurial activity through lowering the cost of doing business in the state." *Id.* (citing *Judge v. American Motors Corp.*, 908 F.2d 1565,

1570–71 (11th Cir.1990) (noting that "Michigan's punitive damage prohibition is informed by the economic desire to 'encourage socially useful enterprise by relieving entrepreneurs from what the legislature regards as an oppressive risk of liability' " (citation omitted))); *see also id.* ("The policies of states that disallow punitive damages are advanced when businesses are encouraged to locate and do business within these states due to their economic advantages such as lower insurance premiums.").[6] Like the plaintiffs, I fail to see how the application of Nebraska's law, under the circumstances at issue, would advance this purpose. It therefore seems to me that Nebraska has little interest in applying its punitive damages laws to a case such as this, where the only connection it has with the defendants is that it was the location of the accident giving rise to the lawsuit.

■ By contrast, the plaintiffs note, "the polices of states that allow punitive damages are advanced when defendants with significant contacts to them are punished for and deterred from bad behavior." Plaintiffs' Brief at 5; *see also In re "Agent Orange"*, 580 F.Supp. at 706 ("The purposes underlying the allowance of punitive damages are punishment of the defendant and deterrence of future wrongdoing.").[7]

4. The plaintiffs also suggest that with respect to the claims against the defendant Transport America for negligent retention, entrustment and/or hiring, "the place where the conduct causing the injury occurred," is Minnesota. *See* Plaintiffs' Brief at 9; *see also* Complaint ¶¶ 39–49 (filing 1) (outlining these claims).

5. It does not appear that the last factor in § 145(2) is particularly important in this case, as there was apparently no relationship between the plaintiffs and the defendants until the accident. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(d) (1971); *see id.* cmt. e ("When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered.").

6. The defendants do not offer any alternative purposes underlying Nebraska's prohibition on punitive damages, other than noting that the prohibition is based on the Nebraska Constitution. *See, e.g., Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 443 N.W.2d 566, 574 (1989) ("[P]unitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction." (citations omitted)).

7. According to the defendants, "Oregon case law suggests that the state's interest in punitive damages is only substantial when doing so protects *Oregon residents* from harm." Defendants' Brief at 16 (emphasis in original) (citing *Axen v. Wyeth–Ayerst Labs.*, 158 Or. App. 292, 974 P.2d 224, 241–42 (1999)). Thus, the defendants conclude, "Nebraska's strict constitutional prohibition against puni-

I would agree with the defendants that Oregon's interest in punishing Rice for conduct occurring in another state, prior to the time he became a resident of Oregon, is minimal. It seems to me, however, that (1) Minnesota has an interest in punishing Transport America, and (2) both Minnesota and Oregon have an interest in deterring future wrongdoing by their respective resident[8] defendants. It also seems to me that these interests are greater than whatever interest Nebraska may have in prohibiting punitive damages against two non-resident defendants. In short, as the plaintiffs suggest in their reply, deterring future wrongdoing by the defendants "would most benefit" their respective states of residence, while protecting two non-resident defendants against excessive financial liability provides little benefit to Nebraska or its citizens. Plaintiffs' Reply at 6. Thus, for the reasons outlined above, I am persuaded that Minnesota and Oregon have the "most significant relationship" to the accident and the parties with respect to the issue of punitive damages. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971).[9]

**IT IS ORDERED** that with respect to the issue of punitive damages, Minnesota law will govern the claims against the defendant Transport Company of America, Inc., and Oregon law will govern the claims against the defendant Cory Wayne Rice.

---

tive damages greatly outweighs any interest which Oregon may have in applying its punitive damages law to an accident which occurred far outside its borders and which caused no harm whatsoever to any Oregon resident." *Id.* at 16–17. However, as the plaintiffs note in their reply brief, the case cited by the defendants also recognized a state's broader interests " 'in punishing unlawful conduct and deterring its repetition.' " *Axen,* 974 P.2d at 241 (brackets in original) (quoting *BMW v. Gore,* 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). Thus, given that "one of the aims of punitive damages is to deter *future* wrongdoing," I do not agree with the proposition that Oregon's interest in imposing punitive damages is substantial *only* when Oregon residents have

been harmed. Plaintiffs' Reply at 6 (emphasis in original).

8. As noted above, the defendant Transport America is incorporated under the laws of Minnesota with its principal place of business in Minnesota. Thus, for the sake of simplicity, I refer to Minnesota as the defendant Transport America's "residence."

9. In their brief, the defendants raise various evidentiary challenges to the exhibits included in the plaintiffs' Discovery Materials and Affidavits in Support of Plaintiffs['] Motion and Brief on Choice of Law Regarding Punitive Damages Pursuant to NELR 7.1(a)(2), filing 12. Because I did not rely on any exhibits that were not otherwise part of the record, I see no reason to address the defendants' objection.