**MEDICAP PHARMACIES, INC., Plaintiff,**

v.

**Randall E. and Dianna M. FAIDLEY, Defendants.**

**No. 4:05 CV 00586.**

United States District Court,
S.D. Iowa,
Central Division.

Feb. 22, 2006.

David N May, Bradshaw Fowler Proctor & Fairgrove, Des Moines, IA, for Dianna M. Faidley, Defendant.

David N May, Bradshaw Fowler Proctor & Fairgrove, Des Moines, IA, for Randall E. Faidley, Defendant.

Dee Joyce–Hayes, Stephen Jerome O'Brien, Sonnenschein Nath & Rosenthal LLP, St Louis, MO, David M Swinton, Belin Lamson McCormick Zumbach Flynn, P.C., Des Moines, IA, for Medicap Pharmacies, Inc., Plaintiff.

## ORDER ON MOTION TO TRANSFER VENUE

PRATT, District Judge.

Before the Court is Defendants' Motion to Transfer (Clerk's No. 9), wherein Defendants request the Court transfer venue in the above-captioned case from the Central Division of the Southern District of Iowa to the United States District Court for the District of Arizona. Plaintiff filed a resistance to the motion (Clerk's No. 13) and Defendants replied (Clerk's No. 15). The matter is fully submitted.

## I. FACTUAL BACKGROUND

Randall and Dianna Faidley (the "Faidleys") are a married couple, residing in Yuma, Arizona, with their four young children. Both Faidleys have college educations, though neither has attended business or law school. Mrs. Faidley is a licensed pharmacist, while Mr. Faidley works for the Department of Defense at the U.S. Army Proving Ground in Yuma, Arizona. Neither have ever lived or owned real property in Iowa, but both have visited Iowa approximately four or five times in relation to their business with Medicap Pharmacies, Inc. ("MPI").

MPI is a corporation organized under the laws of Iowa with its headquarters located in Iowa. MPI became a wholly-owned subsidiary of Medicine Shoppe International, Inc. ("Medicine Shoppe") in December 2003. Medicine Shoppe is headquartered in St. Louis, Missouri and is a Cardinal Health, Inc. company. Cardinal Health, based in Dublin, Ohio, acquired Medicine Shoppe in November 1995. MPI is a "national franchisor," having developed a marketing and business operations system that provides training, services and assistance to franchisees for the operation of prescription pharmacies known individually as "Medicap" pharmacies.

On January 23, 1998, the Faidleys entered into an agreement with MPI to operate a Medicap Pharmacy in Yuma, Arizona, for a period of twenty years. The agreement provided, amongst other things, that the two mile radius around their Medicap store, located at 1651 South Arizona

Avenue, Yuma, Arizona, would be designated as the Faidleys' exclusive territory, and that no other Medicap franchisees would be granted license to operate a Medicap pharmacy within that territory. Additionally, the twenty-two page franchise agreement provided that the Faidleys would establish a Medicap Pharmacy at their own expense and maintain the pharmacy as a Medicap store throughout the term of the franchise agreement. The franchise agreement provided that the Faidleys would "[r]efrain from selling, giving away, or otherwise encumbering any of the records or files related to customers" of their Medicap store, "except in connection with a sale or transfer" of the franchise agreement. The Faidleys were to pay MPI an ongoing license fee of four percent, as well as a national marketing fee of one percent of the gross monthly receipts of their Medicap store, throughout the term of the franchise agreement. Upon expiration, termination, or assignment of the agreement, Defendants as franchisees were subject to a two-year non-compete clause, which prohibited them from owning, operating, consulting with, or being employed by any drug store or pharmacy located within a two mile radius of the franchised Medicap pharmacy. The franchise agreement also provided that certain mediation requirements be met before the filing of suit and that the parties explicitly waive any right to trial by jury. Of particular importance in the present motion, the franchise agreement contained a forum-selection clause stating:

> No action or preceding [sic] involving this Agreement or any aspect of the relationship between the parties or their agents or affiliates shall be commenced by any party except in Polk County, Iowa, nor shall any action commenced in any such court be removed or transferred to any other state o[r] federal court. Notwithstanding the foregoing, if the Company is permitted to seek injunctive relief under this Agreement, the Company may, at its option, bring such action in the county in which the Franchisee's Medicap Pharmacy store is located.

Franchise Agreement, Section XIV (11).

Upon signing the franchise agreement with Medicap, the Faidleys executed a personal guaranty, wherein they agreed to be jointly and severally bound by all covenants, obligations and commitments contained in the franchise agreement. From 1998 to October 6, 2005, the Faidleys operated the Yuma, Arizona, Medicap pharmacy in accordance with the terms of the franchise agreement. On October 6, 2005, according to Plaintiff's Complaint, the Faidleys sold the assets of their Medicap pharmacy, including their customer prescription list, to the Target Corporation for the sum of $260,000. The Faidleys subsequently sold the Medicap pharmacy's inventory to Target as well, following evaluation by an inventory service. According to the Complaint, Dianna Faidley accepted employment, and is currently employed, by an in-store pharmacy at a Target store located less than two miles from the franchised Medicap location. Additionally, the telephone number used by the franchised Medicap pharmacy now rings directly into the Target pharmacy where Dianna Faidley is employed.

On October 25, 2005, MPI filed the present action, alleging that Plaintiffs have sold the Medicap pharmacy assets and have ceased operating the pharmacy, in violation of the franchise agreement. Specifically, Plaintiff claims in Count One that Dianna Faidley breached the licensing agreement by failing to comply with requirements regarding MPI's right of first refusal as to any sale of pharmacy assets, and by failing to get MPI's approval prior to the sale. Additionally, Plaintiff claims

that Dianna Faidley has violated the non-compete provision of the agreement, and should be enjoined from continuing her employment at Target's pharmacy.

Count Two of Plaintiff's Complaint asserts breach of the license agreement in the failure of Defendants to deliver to MPI original records of all patients and customers of the Medicap pharmacy who became customers during the pendency of the franchise agreement, and in the failure of Defendants to return MPI's Policy and Procedures Manual. Plaintiff claims that these breaches of the licensing agreement have caused it to suffer the loss of goodwill, loss of existing and potential customers, harm to reputation, and loss of valued assets in an amount exceeding $75,000.

Finally, Count Three of Plaintiff's Complaint alleges breach of contract based on the reasonable inference that Defendants have permanently closed their Medicap location prior to the expiration of the twenty-year franchise agreement. According to Plaintiff, the store closure and sale of assets to a competitor pharmacy within a two-mile radius has caused irreparable harm to MPI due to loss of customers and goodwill. MPI claims that Defendants' actions have "effectively precluded it from operating a pharmacy within that territory." Plaintiff seeks compensatory damages, attorney's fees and costs.

## II. LAW AND ANALYSIS

### A. *Venue Generally*

Jurisdiction of the federal court in this matter is premised on Plaintiff's claim of diversity jurisdiction pursuant to 28 U.S.C. § 1332. MPI alleges it is a corporation organized and existing under the laws of the State of Iowa with its principal place of business in Polk County, Iowa. The Faidleys are citizens of Arizona. The amount in controversy, from the face of the Com-

plaint, exceeds the jurisdictional requisite of $75,000.00. Pursuant to 28 U.S.C. § 1391(a), when jurisdiction is founded only on diversity of citizenship, a civil action may be brought:

> [O]nly in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any Defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

In the present matter, venue would clearly be proper in the United States District Court for the District of Arizona pursuant to subsection (1), as both defendants reside in Arizona. Likewise, venue would be proper in Arizona under subsection (2), as the franchised Medicap pharmacy was located in Arizona, and virtually all acts or omissions comprising Plaintiff's breach of contract claims against the Defendants took place in Arizona. Indeed, the Court cannot say that a "substantial part of the events or omissions giving rise to the claim" occurred in Iowa, as the only events or omissions tying the present cause to Iowa are: 1) the fact that the Faidleys sent their franchise agreement to Iowa; 2) the fact that the Faidleys traveled to Iowa on a few occasions for training; and 3) the fact that Medicap claims to be incorporated in Iowa with its primary place of business in Iowa.

As to subsection (3), the Faidley's actions in contacting MPI in Iowa, sending a signed franchise agreement to Iowa, and in traveling to Iowa on four to five occasions to undertake training for their franchise,

are more than adequate to subject them to personal jurisdiction here. Moreover, the franchise agreement contained a forum selection clause designating Iowa as the appropriate venue for any litigation arising out of the franchise agreement. Eighth Circuit precedent has established that a party may consent to personal jurisdiction by entering a contract that contains a forum selection clause. *St. Paul Fire and Marine Ins. Co. v. Courtney Enters., Inc.,* 270 F.3d 621, 624 (8th Cir.2001). Moreover, due process is satisfied when a defendant consents to personal jurisdiction in this way. *Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 726 (8th Cir.2001) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

Despite the fact that the Faidleys are subject to personal jurisdiction in Iowa, § 1391(a)(3) provides that venue may lie in "a judicial district in which any Defendant is subject to personal jurisdiction at the time the action is commenced, *if there is no district in which the action may otherwise be brought.*" 28 U.S.C. § 1391(a)(3) (emphasis added). Clearly, in this matter, the District of Arizona provides a proper venue for the action and there is, therefore, another district in which the action could have been brought. While subsection (3) has been found to be broad, its purpose is "presumably owing to a desire to provide some forum for relief of claims, when no forum would otherwise be available." *Burris v. Lindsey & Assoc.,* 2005 WL 1182384 (W.D.Mo. May 17, 2005) (unreported disposition). The provision has thus been interpreted according to its plain meaning, making it inapplicable to a situation where, as here, there is another appropriate and available forum for Plaintiff's grievances to be addressed. *See e.g. id.; Fanselow v. Rice,* 213 F.Supp.2d 1077, 1080 (D.Neb.2002).

The question remains, then, whether the forum selection clause in the franchise agreement, stating that "each [party] agree[s] to submit to the exclusive jurisdiction of the state and federal courts of Iowa with respect to any litigation pertaining to this Agreement . . .", provides Iowa as an appropriate venue, despite its failure under § 1391. If the forum selection clause is valid and enforceable, this question must be answered in the affirmative, as the forum selection clause would then constitute a waiver of Defendants' right to object to venue under the federal statute.

B. *Validity of Forum Selection Clause*

 In a suit based on diversity of citizenship, federal law determines the validity of a forum selection clause. *Sun World Lines, Ltd. v. March Shipping Corp.,* 801 F.2d 1066, 1068–69 (8th Cir. 1986). "[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . ." *Nat. Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315–16, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). To be enforceable, a forum selection clause containing a defendant's consent to either personal jurisdiction or venue must comply with applicable due process standards. *Burger King,* 471 U.S. at 472 n. 14, 105 S.Ct. 2174. Thus, the clause must have been obtained through freely negotiated agreements absent fraud and overreaching and its enforcement must not be unreasonable and unjust. *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The party resisting enforcement of the clause bears a heavy burden in convincing the Court that it should not be held to its bargain. *Id.* at 18, 92 S.Ct. 1907.

Here, Defendants urge that the forum selection clause is unenforceable under Iowa law because there was a disparity in the parties' relative bargaining power and because the clause involves substantively

unfair terms. *See Faber v. Menard, Inc.*, 367 F.3d 1048, 1053 (8th Cir.2004). In federal diversity cases, venue is a matter of procedure, subject to federal, and not state, law. *See e.g. Wellmark, Inc. v. Deguara*, 2003 WL 21254637, *4 (S.D.Iowa May 28, 2003) ("Since enforcement of a forum selection clause in a diversity action is a procedural matter determined under federal law, there is no question that courts apply federal law, not state law, to determine the validity of a forum selection clause in a federal question case such as the one at bar.") (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)); *C. Pappas Co. v. E. & J. Gallo Winery*, 565 F.Supp. 1015, 1017 (D.Mass.1983) (enforcement of forum selection clauses to be decided under federal law); *Hoffman v. Burroughs Corp.*, 571 F.Supp. 545, 548 (N.D.Tex.1982) (federal common law determines enforceability of forum selection clause); *Quick Erectors, Inc. v. Seattle Bronze Corp.*, 524 F.Supp. 351, 355–57 (E.D.Mo.1981) (same).

■ In *M/S Bremen v. Zapata Off–Shore Co.*, the Supreme Court found forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen*, 407 U.S. at 10, 92 S.Ct. 1907. The Supreme Court concluded that a forum selection clause "should control absent a strong showing that it should be set aside." *Id.* at 15, 92 S.Ct. 1907. Factors important in determining the reasonableness of a forum selection clause are whether the clause was the result of an arm's-length transaction, the experience and sophistication of the parties involved in the negotiation, the comparative bargaining positions of the parties, and representation of the parties by legal counsel. *See id.* at 12, 92 S.Ct. 1907; *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F.Supp. 1334, 1344 (N.D.Iowa 1996); *see also Med. Legal Consulting Serv. v. Covarrubias*, 648 F.Supp. 153, 156 (D.Md.1986) (listing nine factors that have been considered by courts in determining the reasonableness of a forum selection clause). Other reasons for invalidating a forum selection clause include fraud or overreaching, duress, illegality, and other conventional grounds for invalidating a contract. *See N.W. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 376–77 (7th Cir.1990).

■ Here, Defendants claim they believed the twenty-two page franchise agreement, including the forum selection clause, was non-negotiable, and that there is a clear disparity in the bargaining power of the parties. The Supreme Court has found forum selection clauses to be valid even where there have not been actual negotiations concerning the clause. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Indeed, the "bare assertion" that a contract was offered on a "take it or leave it" basis is not sufficient as a matter of law to establish that a contract is one of adhesion.[1] *Dominium Austin Partners, L.L.C.*

---

1. An adhesion contract is generally defined as one that is "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms.' " *Pennsylvania Life Ins. Co. v. Simoni*, 641 N.W.2d 807, 813 (Iowa 2002) (quoting Restatement (Second) of Conflict of Laws § 187 cmt. b, at 135 (Rev.1988)); *see also Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 924 (Minn.1982) (an adhesion contract is one that is "drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services that cannot readily be obtained elsewhere."); *Estrin Constr. Co. v. Aetna Cas. and Sur. Co.*, 612 S.W.2d 413, 418 n. 3 (Mo.App.1981) ("A contract of adhesion is a form contract submitted by one party and accepted by the other on the basis of *this or nothing*. It is an instrument

*v. Emerson,* 248 F.3d 720, 726 (8th Cir. 2001). Indeed, even if a contract falls under the rubric of the adhesion doctrine, any particular term sought to be invalidated must also be unconscionable. *See e.g., Webb v. R. Rowland & Co.,* 800 F.2d 803, 807 (8th Cir.1986) ("The use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision. To be invalid, the provision at issue must be unconscionable."); *Surman v. Merrill, Lynch, Pierce, Fenner & Smith,* 733 F.2d 59, 61 n. 2 (8th Cir.1984) (noting that standardized contracts of adhesion are not per se unenforceable, but courts must determine whether a particular clause is unconscionable) (citing 6A A. Corbin, Contracts § 1376, at 20–22 (1962)). With regard to the forum selection clause, Defendants here attest that they didn't believe they had the power to negotiate it, but offer no evidence that they were unaware that the contract contained such a provision, or that they did not understand the provision when they agreed to the contract and all its terms. A review of the contract reveals that the forum selection clause is plainly stated in a subsection of the contract relating to litigation over the agreement and it is in the same size print and plain language as the rest of the contract.

As to whether the forum selection clause is unconscionable such that it should not be enforced, Defendants claim that requiring them to try the present matter in Iowa will provide a result that is unjust and unreasonable. Generally, a forum selection clause may be deemed unconscionable, unreasonable, or unjust where it is shown

devised by skilled legal talent for mass and standard-industry wide use which does not allow for idiosyncracy. It is a transaction not negotiated but one which literally adheres for want of choice.") (emphasis in original).

"that the forum thus selected is 'so gravely difficult and inconvenient that [the defendant] will for all practical purposes be deprived of his day in court.'" *Foster v. Chesapeake Ins. Co., Ltd.,* 933 F.2d 1207, 1219 (3d Cir.1991) (quoting *M/S Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917); *see also RK Dixon Co. v. Dealer Mktg. Servs., Inc.,* 284 F.Supp.2d 1204, 1209 (S.D.Iowa 2003). The Court cannot say that Defendants have presented any evidence that Iowa would be such an inconvenient forum that they would essentially be deprived of their day in court. Indeed, Defendants have already obtained local counsel to represent their interests in this federal court. While admittedly MPI is a large corporate conglomerate and Defendants are inexperienced in running a business, albeit well-educated, it appears that the franchise agreement constituted an arm's-length transaction. Defendants were represented by counsel during their consideration of whether to enter into the agreement and there is no evidence that they were under any time constraints in executing the agreement. Likewise, there is no indication that MPI used its size to disadvantage the Defendants. The record supports the conclusion that Defendants were capable of reading and understanding the agreement and foreseeing the inconveniences that might arise from the forum selection clause in the event a dispute arose under the franchise agreement. While certainly the forum selection clause presents a substantial inconvenience to Defendants, they have not sustained their burden of showing that enforcement of the clause would be so onerous that they would essentially be denied their day in court.[2]

2. With regard to Defendants' argument that several other provisions of the franchise agreement indicate an overall "one-sidedness," the Court notes that Defendants have not cited any case law in support of the prop-

## C. Section 1404(a)

Despite the presence of a valid forum selection clause, the Court is not prevented from considering a motion to transfer pursuant to 28 U.S.C. § 1404(a). In *Plum Tree, Inc. v. Stockment*, the court held that a forum selection clause whose enforcement is not unreasonable does not preclude the selected forum from ordering a § 1404(a) transfer:

Congress set down in § 1404(a) the factors it thought should be decisive on a motion for transfer. Only one of these—the convenience of the parties—is properly within the power of the parties themselves to affect by a forum-selection clause. The other factors—the convenience of witnesses and the interest of justice—are third party or public interests that must be weighed by the district court; they cannot be automatically outweighed by the existence of a purely private agreement between the parties. Such an agreement does not obviate the need for an analysis of the factors set forth in § 1404(a) and does not necessarily preclude the granting of the motion to transfer.

*Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757–58 (3rd Cir.1973); *see also Rouse Woodstock v. Sur. Fed. Sav. & Loan Ass'n*, 630 F.Supp. 1004, 1008 (N.D.Ill.1986).

Section 1404(a), designed as a "federal housekeeping measure, allowing easy change of venue within a unified federal system," provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); 28 U.S.C. § 1404(a). The moving party has the burden of showing that the transfer will be to a more convenient forum. *Am. Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 261 (W.D.Mo.1980).

In determining whether to exercise its discretion to transfer an action pursuant to § 1404, the Court may consider a myriad of factors, including the convenience of parties and witnesses, access to sources of proof and evidence, the governing law, and the possibility of delay if a transfer is granted. As well, the Court may consider practical factors, such as where the case can be tried more efficiently and expeditiously and whether any prejudice will result if a transfer is granted. *See Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir.1997); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F.Supp. 1334 (N.D.Iowa 1996); *Houk v. Kimberly–Clark Corp.*, 613 F.Supp. 923 (W.D.Mo.1985); *Stabler v. New York Times Co.*, 569 F.Supp. 1131 (S.D.Tex. 1983). The burden is upon the party seeking transfer to "make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed." *Houk*, 613 F.Supp. at 927 (citations omitted); *see also Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3rd Cir. 1970) (plaintiff's forum choice is to be given "paramount consideration").

---

osition that the validity of the forum-selection clause depends on the fairness of other terms in the contract. Indeed, as a general matter, the invalidity of one provision of a contract does not necessarily preclude enforcement of other provisions. *See e.g., Nat'l Labor Relations Bd. v. Rockaway News Supply Co.*, 345 U.S. 71, 79, 73 S.Ct. 519, 97 L.Ed. 832 (1953)

(finding that illegal contract provisions will not render an entire contract void unless the "forbidden provision is so basic to the whole scheme of a contract and so interwoven with all its terms that it must stand or fall as an entity"); *McCullough v. Clinch–Mitchell Const. Co.*, 71 F.2d 17, 21 (8th Cir.1934).

1. *Convenience of the parties.*

■ There can be little doubt that litigation in Arizona would be substantially more convenient for Defendants than would be Iowa. Defendants have little to no ongoing contact with the State of Iowa and work and reside exclusively in Yuma, Arizona. Nonetheless, in light of the fact that Defendants entered into a franchise agreement containing a valid forum selection clause, the Court finds that the convenience of the parties is equally served in either Iowa or Arizona. While Defendants imply that litigating the present matter in Iowa would pose a substantial financial burden on them, they essentially waived the right to argue inconvenience when they agreed to the franchise agreement and the forum selection clause. *See e.g. RK Dixon,* 284 F.Supp.2d at 1215. Moreover, the mere fact that the costs of litigation would be more burdensome on Defendants than on Plaintiff should the case remain in Iowa is not alone sufficient cause to grant a transfer. *See Lajaunie v. L & M Bo–Truc Rental, Inc.,* 261 F.Supp.2d 751, 754 (S.D.Tex.2003) (concluding that shifting costs, rather than reducing them, does not support transfer).

2. *Convenience of witnesses.*

Defendants next argue that the convenience of potential Arizona witnesses weighs heavily in favor of transfer. The convenience of non-party witnesses is generally considered to be one of the most important factors to be weighed in the venue transfer analysis. *See e.g. United States v. Hartbrodt,* 773 F.Supp. 1240, 1243 (S.D.Iowa 1991); *Am. Standard,* 487 F.Supp. at 262. The Faidleys assert that crucial non-party witnesses will be in Arizona, because virtually all events giving rise to the present claim occurred in Arizona. Without identifying prospective witnesses, the Faidleys point out that they will likely need to offer testimony of pharmacy customers who live and shop in Arizona to counter Plaintiff's claim that it has lost so much customer goodwill that it is "effectively precluded from operating another Medicap Pharmacy" within the franchised territory. Plaintiff, on the other hand, argues that Defendants have merely alleged that they will call unidentified witnesses who will give irrelevant testimony and that the Court should disregard Defendants' arguments on this factor.

■ "[T]he party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Nelson v. Master Lease Corp.,* 759 F.Supp. 1397, 1402 (D.Minn.1991) (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3851 at 425). In determining this factor, the court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. *Reid–Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991). "The burden is on the defendant to provide these facts by way of affidavit or other information." *Id.* (citing *Piper Aircraft Co.,* 454 U.S. at 258, 102 S.Ct. 252). Defendants here have not named any potential witnesses, though they have attempted to identify relevant testimony to be given by unnamed witnesses as relating to the likelihood that such witnesses have lost goodwill toward MPI and whether such witnesses would likely shop at a Medicap in the Faidley's franchised territory should another franchise open there. Defendants' unspecific allegations are insufficient to carry their burden on this factor. *See id.* at 1397, n. 10 (noting that overly detailed affidavits are unnecessary to carry a defendant's burden of persuasion, but rejecting the notion that the convenience of non-

party witnesses factor could weigh in favor of transfer when *no* affidavits or information are offered).

### 3. *Subpoenaing witnesses.*

Defendants also argue that the ability to subpoena witnesses would be hampered by maintaining Iowa as the forum for the present action. This Court may serve a subpoena any place within the district or "at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena . . . ." Fed. R.Civ.P. 45(b)(2). Yuma, Arizona, clearly falls outside of the 100 mile range this Court has at its disposal. It has been held that the availability of the compulsory process to insure the attendance of witnesses is a factor which district courts may consider. *See Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. 252; *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir.1991). The fact that witnesses in Arizona cannot be compelled to testify if the trial is held in Iowa weighs in favor of transfer. *Id.* This is true only, however, if it is shown that the witnesses in Arizona have relevant testimony and that testimony will be inadequate if offered only via deposition. *Terra*, 922 F.Supp. at 1360–61. As with the convenience of witnesses factor, Defendants have failed to meet their burden of persuasion on this factor because they have not named any actual potential witnesses, nor have they offered any evidence that witnesses would be unable or unwilling to testify in Iowa, or that deposition testimony of such witnesses would be inadequate.

### 4. *Books and records.*

While access to books and records is a factor to be taken into account when determining if transfer is warranted, modern technology allows easy reproduction and little weight should be given if the records can be easily transported. *See Coker v. Bank of America*, 984 F.Supp. 757, 766 (S.D.N.Y.1997) (concluding in the era of photocopying, fax machines, and Federal Express, the weight given to this factor is slight); *Met–L–Wood Corp. v. SWS Indus., Inc.*, 594 F.Supp. 706, 710 (N.D.Ill. 1984) (finding location of books and records not an important factor unless documents so voluminous that transportation is a major undertaking). The Faidleys have produced no evidence suggesting that any relevant documents would be too voluminous to transport. Therefore, this factor is given little, if any, weight in the transfer analysis. *See Coker*, 984 F.Supp. at 766. Nor have the Faidleys claimed the documents and records need to be within the subpoena power of the trial court. *See Spound v. Action Indus., Inc.*, 369 F.Supp. 1066, 1068–69 (N.D.Ill.1974) (finding location of documents and records should be weighed in the transfer analysis when transfer would allow trial court to exercise subpoena power).

### 5. *General interests of justice.*

### a. *Forum selection clause.*

Though the Court has determined that the forum selection clause between MPI and the Faidleys is valid, its presence is not dispositive. The forum selection clause does, however, constitute a significant factor that figures centrally in deciding whether a transfer should be granted. *Stewart*, 487 U.S. at 29, 108 S.Ct. 2239. Indeed, considerable deference is to be given to a plaintiff's choice of forum, even absent the presence of a valid forum selection clause. *Terra*, 119 F.3d at 695. Accordingly, this factor weighs in favor of maintenance of suit in Iowa.

### b. *Location where events giving rise to claim occurred.*

Some courts have given weight to the location of the conduct and events giving

rise to the cause of action. *Boyd v. Snyder*, 44 F.Supp.2d 966, 970 (N.D.Ill.1999). Clearly, this factor would weigh in favor of transfer because the conduct complained of (breach of contract) occurred in Yuma, Arizona. *Id.* However, one advantage to litigating in Arizona offered by the Faidleys is the possibility of jury visits. Plaintiff counters that the parties have waived their right to jury trial in the franchise agreement and no such visits would be necessary in the context of a bench trial. Regardless of the validity of the jury waiver in the franchise agreement, photographs are a suitable and accurate substitute for on-location jury visits. *See DMP Corp. v. Fruehauf Corp.*, 617 F.Supp. 76, 78 (W.D.N.C.1985) (finding photographs of a facility can provide a jury with accurate information in the event it became necessary). Because the Faidleys have not offered any evidence that a jury visit to the two-mile area in question will have any significant bearing on the outcome of the case, this factor does not give weight to either side of the analysis. *Id.*

c. *Local interest in deciding the matter.*

The Supreme Court has held "there is a local interest in having local controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). The Faidleys argue this is a case of local interest to Arizonans because it impacts the way in which health care services will be delivered to citizens in Arizona. (Clerks # 10, p. 18, ¶¶ 1–3). MPI counters that the present issues are not localized in Arizona, but instead deal with national concerns involving an Iowa corporation. (Clerk's # 13, p. 13, ¶ 2). It has been held that where local law controls, there is local interest in applying that law. *Intranexus, Inc. v. Siemens Med. Solutions Health Servs. Corp.*, 227 F.Supp.2d 581, 585 (E.D.Va.2002) (finding

even though none of the acts alleged occurred in Pennsylvania and Virginia had an interest in the outcome of the case, Pennsylvania's interest in applying Pennsylvania law carried more weight in a transfer analysis). Here, the interest of Arizona citizens in the availability of varied pharmacies seems to counter the interest of Iowa in applying Iowa law, giving this factor equal weight on both sides of the analysis.

d. *Enforceability of the judgment.*

If injunctive relief is sought in Arizona, a court in Arizona would be in the best position to enforce the injunction. *Event News Network, Inc. v. Thill*, No. 05 C 2972, 2005 WL 2978711, at *6 (N.D.Ill. Nov.2, 2005) (finding factor weighs for transfer when enforcement primarily required in another district); *Law Bulletin Publ'g, Co. v. LRP Publ'n, Inc.*, 992 F.Supp. 1014, 1021 (N.D.Ill.1998) (finding court "closer to the action" would be in better position to enforce injunction). This factor weighs in favor of transfer because the injunction sought against the Faidleys would most easily be enforced by a court in Arizona. *Id.* Although this factor weighs heavily in favor of transfer, it is not dispositive and all other relevant factors must be balanced in the transfer calculus. *See e.g., College Craft Cos., Ltd. v. Perry*, 889 F.Supp. 1052, 1057 (N.D.Ill. 1995) (balancing home forum, speedy resolution, convenience of witnesses, convenience of parties, where the events took place, public interest, and where to best enforce the requested injunction in deciding to grant the motion for transfer).

e. *Additional interests of justice.*

Some courts have concluded that jury duty is a burden which should not be imposed on a community with no relation to the litigation at hand. *See Reid–Walen*, 933 F.2d at 1403; *Chicago, Rock Island*

*and Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955). The fact that MPI is an Iowa corporation diminishes the likelihood that Iowa jurors would be burdened with hearing a case wholly unrelated to Iowa interests. Moreover, there is some dispute as to whether there will be a jury trial in this case at all. The franchise agreement contains a waiver by both parties of the right to jury trial. MPI has indicated an intent to enforce this clause, and the Faidleys have indicated an intent to challenge it as unconscionable. The issue of enforceability is not before the Court in the present motion, however, making it difficult for the Court to give weight either in favor or against transfer on this factor.

f. *Expeditious and efficient trial.*

 While a court should not grant a motion to transfer simply for its own convenience, a prompt trial is a consideration to be taken into account when weighing the interests of justice. *Fannin v. Jones,* 229 F.2d 368, 369–70 (6th Cir.1956). The Faidleys admit that both Arizona's and Iowa's federal courts are very busy, but emphasize that the Southern District of Iowa has a history of more trial time than does the District of Arizona. (Clerk's # 10, p. 16, ¶ 1). MPI states simply that "this Court is the best arbiter of its own workload." (Clerk's 13, p. 14, ¶ 1). On the present record, the Court is unaware of any facts which would indicate that Arizona courts are any more or less capable of handling the present case in an expedient and efficient manner. Accordingly, this factor does not weigh in favor of transfer.

### III. CONCLUSION

After careful consideration, the Court concludes that the forum selection clause in the franchise agreement underlying this case is enforceable. Moreover, while most factors in the § 1404(a) analysis do not lean substantially either in favor of or against transfer, the few factors favorable to transfer are not particularly weighty. While Plaintiff has not indicated any reason beyond its incorporation in Iowa to have the present case heard in this forum, Defendants have not offered any evidence indicating that MPI has chosen its home state only to vex them or make litigation difficult. *See Piper Aircraft Co.,* 454 U.S. at 255–56, 102 S.Ct. 252 (noting that a plaintiff that chooses its home forum is generally presumed to have chosen the forum because it is convenient). Indeed, it is ultimately the Defendants' burden to show that the § 1404(a) factors weigh "strongly" in their favor. *Gulf Oil Co.,* 330 U.S. at 508, 67 S.Ct. 839; *United Mortgage Corp. v. Plaza Mortgage Corp.,* 853 F.Supp. 311, 314 (D.Minn.1994) (citations omitted) (holding that transfer under § 1404(a) "should not be freely granted"). While Defendants have made good arguments in favor of transfer, they have failed to proffer sufficient evidence to sustain their heavy burden. Accordingly, the Motion to Transfer Venue (Clerk's No. 9) is DENIED.

IT IS SO ORDERED.