**WELLS FARGO FINANCIAL
LEASING, INC.,
Plaintiff,**

v.

**ORLANDO MAGIC LTD., and RDV
SPORTS, INC., Defendants.**

No. 4:05–cv–00552–JEG.

United States District Court,
S.D. Iowa,
Central Division.

May 19, 2006.

Brian L. Stowe, Finley Alt Smith Scharnberg Craig Hilmes & Gaffney, PC, Des Moines, IA, for Plaintiff.

Brent B. Green, Duncan Green Brown Langeness & Eckley PC, Des Moines, IA, for Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

GRITZNER, District Judge.

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Lack of Venue, or in the Alternative, Motion for Transfer to the U.S. District Court for the Middle District of Florida. Plaintiff Wells Fargo Financial Leasing, Inc. ("Wells Fargo"), is represented by Brian Stowe. Defendants Orlando Magic, Ltd. ("The Magic"), and RDV Sports, Inc. ("RDV"), are represented by Brent Green. The matter came on for hearing on March 14, 2006. The matter is now fully submitted and ready for ruling.

### SUMMARY OF MATERIAL FACTS

Wells Fargo is an Iowa corporation. The Magic is a Florida limited partnership whose sole and general partner is RDV, a Michigan corporation. On September 25, 2003, the parties entered into a lease agreement for office equipment under which Wells Fargo was the lessor, The Magic was the lessee, and Digital Technology Systems, LLC ("DTS"), was the vendor. The lease provided office equipment to The Magic, namely print and copy machines used to produce The Magic's brochures and promotional items. The agreement provided for sixty monthly payments from The Magic to Wells Fargo in the amount of $25,175 each.

Lorisse Garcia, The Magic's Vice President of Human Resources, signed the lease in Orlando. According to Defendants, The Magic negotiated with DTS to provide the copy equipment from DTS's Florida offices, and Wells Fargo entered the transaction only when DTS requested that it provide financing. Defendants claim no Magic employee consulted or negotiated with Wells Fargo about the lease. After the lease agreement was executed, Wells Fargo funded the transaction by purchasing the equipment and leasing it to The Magic.

Wells Fargo contends The Magic made the required monthly payments from October 2003 to August 2005 but thereafter failed to make payments and is now in default. While Wells Fargo claims the present action is a simple suit for collection after breach of a lease agreement, Defendants claim the case actually turns on the performance of DTS. According to Defendants, the lease agreement provided for fifty-four new machines, but DTS delivered thirty-six used or otherwise nonconforming machines. The Magic initially continued to pay on the lease obligation in reliance on promises by DTS to cure the "incomplete and nonconforming" equipment delivery. The Magic argues the proper equipment was never delivered.

Wells Fargo offers The Magic executed a "Delivery and Acceptance Certificate" as part of the credit application and thereby certified that The Magic had received the

equipment and found it acceptable. Lorisse Garcia attests that she did not sign the Delivery and Acceptance Certificate or initial the figures on the credit application, and she believes these signatures were forged.

Wells Fargo filed an Amended Complaint in this court on October 6, 2005, to recover the remaining balance under the lease, $1,061,152.21. In a second count, the Complaint also seeks recovery of damages from RDV as the general partner of The Magic. Wells Fargo invokes the diversity jurisdiction of this court pursuant to 28 U.S.C § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. The subject matter jurisdiction of the court is not disputed. Personal jurisdiction and venue are the subjects of Defendants' Motion to Dismiss, filed in its final amended form on November 15, 2005.

Wells Fargo contends this court has personal jurisdiction and that venue lies in the Southern District of Iowa by virtue of the following lease provision:

This agreement shall be governed by, construed and enforced in accordance with the laws of the State of Iowa. The parties agree that this agreement shall be treated as though executed and performed in Polk County, Iowa and any legal actions relating to this Agreement must be instituted in the courts of Polk County, Iowa or the United States District Court for the Southern District of Iowa, which shall have exclusive jurisdiction. You and we waive the right to trial by jury in an action between us.

Defendants claim neither the language of the lease nor any contacts between The Magic and Iowa are sufficient to confer personal jurisdiction and that the present venue is improper. According to Defendants, personal jurisdiction and venue lie in Florida because all of the acts and omissions that are the subject matter of this case occurred in Florida, where the equipment and relevant witnesses are located. They further assert that DTS has been closing business locations in response to other allegations of failure to deliver proper equipment. Defendants request that the case be dismissed or transferred to the Middle District of Florida.

## APPLICABLE LAW AND DISCUSSION

### I. PERSONAL JURISDICTION

▮ "To defeat a motion to dismiss for lack of personal jurisdiction, the non-moving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir.2003). The Plaintiff bears the ultimate burden of proving jurisdiction by a preponderance of the evidence, but it need not do so until trial or such time as the Court orders an evidentiary hearing. *Id.*

▮ "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction challenges involve a two-step analysis: First, the Court "must consider whether the state in question would accept jurisdiction under the circumstances. Then we must determine whether that exercise of jurisdiction comports with due process restrictions." *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir.1993). Personal jurisdiction in Iowa reaches to the fullest extent permitted by the Constitution, so the only question before the Court is whether its exercise of personal jurisdiction over The

Magic comports with the due process considerations of the Fourteenth Amendment. *State ex rel. Miller v. Grodzinsky,* 571 N.W.2d 1, 3 (Iowa 1997).

■ The key to the Fourteenth Amendment inquiry is whether The Magic has sufficient minimum contacts with Iowa such that maintaining the suit here will not "offend traditional notions of fair play and substantial justice." *Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073 (8th Cir.2004) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A court may only exercise personal jurisdiction over a defendant who has, through some act, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ In the present case, personal jurisdiction is premised on provisions in the lease agreement under which Wells Fargo claims The Magic consented to litigate any dispute arising from that agreement in this court. Unlike subject matter jurisdiction, which is a restriction on federal power and to which a litigant cannot consent; personal jurisdiction is a function of the individual liberty interest, and as such, a litigant may agree in advance to submit to the jurisdiction of a particular court. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702–03, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."). Express or implied consent to personal jurisdiction may be expressed in a "variety of legal arrangements," including by contract. *Id.* (citing *Nat'l Equip. Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court")).

■ Wells Fargo claims the forum selection clause in the lease contract constitutes a waiver of The Magic's right to contest personal jurisdiction in the Southern District of Iowa. As the Supreme Court has recognized, "particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Rudzewicz,* 471 U.S. at 472 n. 14, 105 S.Ct. 2174. Due process is not offended by the enforcement of a forum selection clause unless the objecting party can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In fact, the Supreme Court has found forum selection clauses can serve the important ends of judicial economy by pre-determining the forum for dispute resolution and avoiding the time and costs involved in pretrial motions to establish the correct forum, *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), though the current motion suggests that may be an elusive goal.

■ "The key issue is whether the clause is enforceable." *M.B. Restaurants, Inc. v. CKE Restaurants, Inc.,* 183 F.3d 750, 752 (8th Cir.1999). Forum selection clauses are prima facie valid, *id.,* and should be given effect unless the resisting party can make a "strong showing that it should be set aside." *Carnival Cruise Lines, Inc.,* 499 U.S. at 591, 111 S.Ct. 1522 (quoting *Bremen,* 407 U.S. at 15, 92 S.Ct. 1907).

■ An otherwise enforceable forum selection clause cannot be defeated

because one party is inconvenienced, unless that inconvenience is so extreme that the difficulty of trying the case in the contractual forum would deprive the opposing party if its fair day in court. *M.B. Restaurants, Inc.*, 183 F.3d at 752–53. Furthermore, a clause may be set aside if it is unjust, unreasonable, or invalid due to fraud or overreaching. *Id.* at 752 (citing *Bremen*, 407 U.S. at 15, 92 S.Ct. 1907).

The Magic contends the real issue in this case is the performance failure and alleged fraudulent activity of DTS, which will provide the basis for its defense. Therefore, The Magic asserts that it must be allowed to litigate in Florida to use the subpoena power of the Florida courts to compel the testimony of DTS employees. It also claims litigation in Iowa would be extremely inconvenient because certain documents and the equipment in question are located in Florida. However, these evidentiary arguments are unavailing.[1] The Magic has not shown that the testimony of the DTS employees is unavailable by alternative means such as deposition or videotaped deposition.[2] Documentary evidence can be easily copied and provided to a court in Iowa, and The Magic has failed to show why examination of the equipment is necessary to this breach of contract action or that expert witness testimony or other evidence would not adequately convey the necessary information. Litigation in Iowa may require The Magic to present evidence in a slightly different manner than it presently envisions. However, it

has failed to demonstrate that any such difference would render Defendants unable to defend themselves, or that an Iowa forum would be so inconvenient as to deprive Defendants of their fair day in court.

To set aside a forum selection clause for fraud, the contesting party must allege that the clause was itself a product of fraud, specify facts supporting claims of fraud, or allege that courts in the designated state would be biased or incompetent or unwilling to apply another state's law if applicable. *M.B. Restaurants, Inc.;* 183 F.3d at 752–53. The Magic claims that the forum selection clause was part of a boiler-plate provision that it had no power to alter,[3] but it does not make specific factual allegations of fraud against Wells Fargo concerning the lease execution or the inclusion of its forum selection clause. The Magic does not claim Wells Fargo is responsible for the alleged fraud or forgery concerning the Delivery and Acceptance Certificate or delivery failures, and generally focuses its accusations in that regard on DTS. Finally, The Magic makes no claim that a court located in Iowa would be biased, incompetent, or unwilling to apply another state's law if necessary, and there is no basis for any such inference.

Also relevant to the enforceability of a forum selection clause is the experience and sophistication of the parties, the equality of the relative bargaining power of the parties, whether the transaction was

---

1. *See also* discussion *infra* Part III, discussing evidentiary inconvenience as it applies to the transfer analysis.

2. The Court notes the lease contains a waiver of the right to jury trial. The use of depositions rather than live testimony in a trial to the Court rather than to a jury would be of reduced significance.

3. The fact that the clause was not specifically negotiated for will not, alone, render the

clause unenforceable. *Carnival Cruise Lines, Inc.*, 499 U.S. at 593, 111 S.Ct. 1522 ("we do not adopt the Court of Appeals' determination that a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining"); *M.B. Restaurants, Inc.*, 183 F.3d at 753 ("The fact that the contract was a form contract and that the individual clauses were not actually negotiated does not render the clause per se unenforceable").

the result of arm's-length negotiations, and whether enforcement would contravene strong public policy of the forum where the suit is brought. *Bremen,* 407 U.S. at 12, 92 S.Ct. 1907; *Excell, Inc. v. Sterling Boiler & Mech., Inc.,* 106 F.3d 318, 321 (10th Cir.1997); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 280 (9th Cir.1984).

The Magic states that this Court follows the policy of endeavoring to "protect poorly educated or illiterate parties from certain boilerplate language on the grounds that it is 'not of a type that would reasonably appear to the recipient to contain the terms of a proposed contract.'" *Republic Credit Corp. I v. Rance,* 172 F.Supp.2d 1178, 1183 (S.D.Iowa 2001) (quoting E. Allan Farnsworth, Contracts § 4.26 (2nd ed.1990)). Courts have also looked with disfavor upon "such language where it is included in the writing in such a way that an uninitiated reader would not reasonably understand it to be part of the offer." *Id.* The Magic claims the choice of law provision is contained in a "scant statement" in small print in the boilerplate provisions on the reverse side of the lease agreement. The Magic also complains that the provision is not in all capital letters.

The choice of law provision The Magic complains of—"This agreement shall be governed by, construed and enforced in accordance with the laws of the State of Iowa"—is actually only a portion of the paragraph which also includes a specific forum selection clause further stating,

> "The parties agree that this agreement shall be treated as though executed and performed in Polk County, Iowa and any legal actions relating to this Agreement must be instituted in the courts of Polk County, Iowa or the United States District Court for the Southern District of Iowa, which shall have exclusive jurisdiction."

Although The Magic repeatedly refers to the "choice of law" provision, the Court will refer to the forum selection clause to more accurately reflect the contract provision that is at issue for purposes of the personal jurisdiction analysis. *See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.,* 111 F.3d 1386, 1390 (8th Cir.1997) ("a choice of law provision in itself is insufficient to create personal jurisdiction"); *St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.,* 270 F.3d 621, 624 (8th Cir. 2001) (a party may consent to personal jurisdiction by signing a contract with a forum selection clause).

The Magic is a professional basketball organization which handles numerous contracts; the contract for one player alone may involve millions of dollars. The notion that this Court should excuse The Magic from the lease's forum selection clause because it is "poorly educated or illiterate" or is an "uninitiated reader" generates little influence. The Magic attempts to suggest Lorisse Garcia, Vice President of Human Resources, was an "uninitiated reader" whose execution of a contract with a forum selection clause should not be binding on The Magic. The Magic does not support this assertion with any information regarding Ms. Garcia's normal duties or how contracts are normally handled within the company and does not make any argument that Ms. Garcia was acting outside the scope of her agency. Simply stating Ms. Garcia is "clearly" an uninitiated reader because she is the vice president of human resources is insufficient. It would be anomalous to undermine negotiated contract terms between sophisticated organizations by unilaterally selecting an unsophisticated employee to review or execute the documentation.

The Magic's attempts to use *Republic Credit Corp. I v. Rance* in support of its

proposition are similarly unavailing. In *Rance*, the court found the forum selection clause adequate to confer personal jurisdiction and did not limit the clause's effect because it was located in boiler-plate language. *Rance*, 172 F.Supp.2d at 1183. The court determined that the party, an attorney, should be expected to read a one-page contract that involved an $850,000 loan. *Id.*

The paragraph in question, although not in capital letters, is on the second page of a two-page contract, not buried in dozens of pages.[4] Wells Fargo and The Magic are both sophisticated corporate entities who engaged in an arm's-length transaction involving a two-page lease. There is no evidence of a disparity in bargaining power that should render the clause unenforceable; nor is it a contravention of public policy to expect an organization such as The Magic to have a competent employee read a two-page lease that involved over one million dollars, or to anticipate Wells Fargo would seek to mitigate potential litigation costs in defining the financial parameters of their lease arrangements.

Finally, the clause at issue is mandatory, not permissive; that is, the lease does not permit litigation in Iowa as one acceptable forum, it *requires* that any cause of action "**must** be instituted in the courts of Polk County, Iowa or the United States District Court for the Southern District of Iowa, which **shall** have **exclusive** jurisdiction." (emphasis added). *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F.Supp. 1334, 1373 (N.D.Iowa 1996) ("the clause is not merely a consent to jurisdiction clause that does not exclude the jurisdiction of other courts").

The Magic argues that it did not consent to personal jurisdiction via the forum se-lection clause in the lease and that every aspect of the agreement took place in Florida. Therefore, it claims this Court cannot rely on the lease provisions alone to confer jurisdiction and must engage in a full minimum contacts analysis. Specifically, The Magic states that entering into a contract with a forum resident, even one with a choice of law provision, does not provide the requisite minimum contacts. While The Magic offers a correct statement of law, that law is not relevant to the present analysis. *See Nw. Airlines, Inc.*, 111 F.3d at 1390 (choice of law provision relevant but not dispositive consideration); *Jarvis and Sons, Inc. v. Freeport Shipbuilding and Marine Repair, Inc.*, 966 F.2d 1247, 1250 (8th Cir.1992) (contract did not provide sufficient minimum contacts). Here, Wells Fargo does not base its assertion of jurisdiction merely upon the existence of a contract or a provision therein specifying Iowa law. On the contrary, the lease agreement contains a specific forum selection clause that grants this Court exclusive jurisdiction.

The Eighth Circuit relies on five factors when determining personal jurisdiction:

> "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. The first three factors are of primary importance."

*Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir.1994).

The Magic urges the Court that it has no contacts with Iowa of sufficient "nature" "quality" or "quantity" to satisfy the

---

4. Wells Fargo also notes that the first page of the agreement refers to the forum selection clause in capital letters: "YOU AGREE TO JURISDICTION AND VENUE AS STATED IN THE PARAGRAPH TITLED APPLICABLE LAW OF THE AGREEMENT." This sentence appears in the "Guaranty" section, however, which was not executed.

minimum contacts inquiry. Insufficient minimum contacts have been found where the defendant corporation had no office or agent in the forum state, no employees visited the state relating to the contract, the contract was negotiated, executed, and performed in another state, and the plaintiff solicited the contact with the defendant such that defendant did not purposefully avail itself of the forum state. *Jarvis and Sons, Inc.*, 966 F.2d at 1250. Lack of minimum contacts has also arisen in instances where the defendant company had no bank accounts or business operations in the forum state, did not advertise or solicit business in the state, and did not tailor its products for use in the forum state. *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 576 (8th Cir.1992).

The Magic claims it, like the defendant corporations in the above cases, has no office or agent in Iowa, no Magic employees visited Iowa regarding the lease agreement, the lease was negotiated, executed, and performed in Florida, and The Magic owns no property and has no bank accounts in Iowa. Therefore, The Magic claims no minimum contacts with Iowa exist.

■■■ Wells Fargo counters that The Magic purposefully availed itself of the benefits and protections of Iowa law when it signed a lease agreement providing jurisdiction in the Iowa courts and that Iowa law would govern the agreement. Indeed, while a choice of law provision alone will not confer jurisdiction, it may reinforce a defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Rudzewicz*, 471 U.S. at 482, 105 S.Ct. 2174 (discussing choice of law provision in a 20–year franchise relationship). In addition, the lease provided, "this agreement shall be treated as though executed and performed in Polk County, Iowa." Wells Fargo argues, therefore, The Magic should not be surprised to be sued in Iowa.

Wells Fargo also distinguishes the case law relied upon by The Magic because none of those cases involved a forum selection clause. As previously noted, a valid forum selection clause may confer personal jurisdiction, and The Magic has not demonstrated invalidity of that clause in the present action.

The remaining two factors concern the interest of the forum state and the convenience of the parties. A forum state's "interest in providing its residents with a forum cannot make up for the absence of minimum contacts." *Digi–Tel Holdings, Inc. v. Proteq Telecomm. Ltd.*, 89 F.3d 519, 525 (8th Cir.1996). The Magic claims Iowa has no interest in this case because the Wells Fargo parent company is located in San Francisco, California, and Wells Fargo Financial has customers in 47 states and internationally; therefore, Wells Fargo cannot be considered an "Iowa company."

Wells Fargo[5] is incorporated and has its principal place of business in Iowa and claims that because it is an Iowa resident, the courts of its home state have an interest in enforcing its agreements. Wells Fargo argues that The Magic accepted and benefited from Wells Fargo financing the transaction, and part of the consideration for that financing was a contractual agreement to litigate in Iowa. Further, The Magic forwarded payments to Iowa and communicated with Wells Fargo in Iowa via e-mail, telephone, and fax after the lease was executed. Finally, Wells Fargo claims the injury occurred in Iowa because the "property" at issue is the money it is entitled to in Iowa.

---

**5.** The Court must focus on the fact that the Plaintiff herein is Wells Fargo Financial Leas-ing, Inc., not the parent company.

The Magic also claims it would be inconvenient for it to litigate in Iowa due to the number of witnesses and exhibits located in Florida compared to that in Iowa. The relative inconvenience of the parties has already been discussed in conjunction with the analysis of the enforceability of the forum selection clause. The Magic has failed to demonstrate compelling inconvenience.

The Magic is a sophisticated entity who, given the nature of this transaction and the accompanying documentation, cannot be said to have been unfairly surprised at suit in Iowa. Wells Fargo considers the cost of litigation in its home state of Iowa when it figures the cost of providing financing, and the Court finds no reason it would not be entitled to the benefit of its bargain. The Magic was a willing party to that bargain. Accordingly, the Court finds that it has personal jurisdiction over Defendants, and litigation in this court will not offend notions of fair play and substantial justice.

## II. VENUE

■ The Magic argues that venue in Iowa cannot be proper because none of the requirements of the federal venue statute, 28 U.S.C. § 1391, are met in this case. The law provides that venue is proper in diversity cases in

(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). The Magic states that it is a Florida resident and RDV is a Michigan resident, and therefore no Defendant resides in Iowa, and subsection (a)(1) is inapplicable. It next argues that all of the events or omissions giving rise to the claim occurred in Florida, and the subject property is the copy equipment, which is also in Florida, rendering subsection (a)(2) inapplicable. Finally, The Magic claims it is not subject to personal jurisdiction in Iowa and the case could have been brought in Florida under subsection (a)(2), and therefore subsection (a)(3) is inapplicable and venue does not lie in the Southern District of Iowa.

Wells Fargo argues that venue is proper in the Southern District of Iowa pursuant to the forum selection clause and § 1391(a)(2). The clause provides that any legal action relating to the lease must be brought in Iowa and further provides that the lease will be treated as though executed and performed in Polk County, Iowa. In addition, Wells Fargo claims the subject property is the money it is owed in Iowa.

■ Parties to a contract may include a choice of venue provision as part of the agreement. Such an arrangement was recently enforced by the Eighth Circuit, which affirmed the decision of the Eastern District of Arkansas to dismiss a case for improper venue. *Servewell Plumbing, LLC v. Fed. Ins. Co.*, 439 F.3d 786, 787 (8th Cir.2006). The court agreed with the district court that the forum selection clause determined venue because it was contained in a contract which the parties freely entered into, and therefore the challenging party "could anticipate having to litigate in Florida." *Id.* at 788.

The Magic and Wells Fargo freely entered into a lease agreement with a forum selection clause under which The Magic could have anticipated litigation in Iowa. The issue of the validity and applicability of the forum selection clause has already been addressed above and need not be

repeated here. The clause is sufficient to render this court the appropriate venue for the pending litigation.

## III. TRANSFER TO THE MIDDLE DISTRICT OF FLORIDA

■■■■ The federal transfer statute provides "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). This statute is "intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). District courts are not limited to the factors enumerated in the statute but may consider all relevant factors. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir.1997). A valid, applicable forum selection clause is "one factor, albeit a very important one, in the overall transfer analysis." *Id.* at 695.[6]

■■■■ In determining whether transfer is appropriate, relevant "convenience" factors include the following:

"(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law."

*Terra Int'l, Inc.*, 119 F.3d at 696. Relevant, and somewhat overlapping, factors implicating the interest of justice include,

"(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."

*Id.*

■■■■ The Magic claims litigating in Florida would not inconvenience Wells Fargo, and litigating in Iowa would impair Defendants' ability to present necessary evidence. According to Defendants, transferring the case would not be inconvenient for Wells Fargo because it is a nationwide company which is already involved in other litigation in Florida. Wells Fargo claims it would be inconvenienced by litigating in Florida, and a transfer would merely transfer the inconvenience to another party, and " '[m]erely shifting the inconvenience from one side to the other ... is not a permissible justification for a change of venue.' " *Terra Int'l, Inc.*, 119 F.3d at 696–97 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir.1992)).

■■■■ Wells Fargo further claims that the Plaintiff's choice of forum must be given "paramount consideration," and transfer should only be granted when "the balance of interest is strongly in favor of transfer." *Kovatch Corp. v. Rockwood Sys. Corp.*, 666 F.Supp. 707, 708 (M.D.Pa. 1986); *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir.1995) ("a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum"). Courts will normal-

---

**6.** When the motion to transfer venue is related to a contractual forum selection clause, a federal court sitting in diversity must apply federal law when ruling on the motion. *Stewart Org., Inc.*, 487 U.S. at 28, 108 S.Ct. 2239.

ly hesitate to disturb a plaintiff's choice unless the moving party "demonstrates that the balance of convenience and justice weighs heavily in favor of transfer." *Kovatch Corp.*, 666 F.Supp. at 708. Although a valid forum selection clause is not dispositive of the transfer analysis, it "is 'a significant factor that figures centrally in the district court's calculus' in a motion to transfer." *Terra Int'l, Inc.*, 119 F.3d at 697 (quoting *Stewart Org., Inc.*, 487 U.S. at 29, 108 S.Ct. 2239). In fact, when the forum selection clause indicates a different forum than the one the plaintiff has chosen, even the deference traditionally given to the plaintiff's choice will give way to "an appropriate venue" that previously has been "freely contractually chosen" by the plaintiff. *Jumara*, 55 F.3d at 880.

The Magic further asserts the convenience of the parties and the interests of justice require transfer to Florida because nearly all of the witnesses and relevant evidence are located in Florida, including The Magic employees, DTS employees, documentary evidence, and the allegedly nonconforming equipment that is the subject of the lease. The Magic claims examining the equipment in person will be necessary to address the issues in this case, specifically, to demonstrate the serial numbers and condition of the machines. In addition, The Magic is particularly concerned about the availability of compulsory process to secure the appearance of two witnesses from DTS: its CEO Joe Johnigan and CFO Dale Darr. The Magic believes DTS is closing down its business operations in response to claims in Florida courts, and it will require a Florida forum to compel their testimony. Without this testimony, the Magic claims it will be unable to present all its defenses, and thus the interests of justice will be frustrated without a transfer to Florida.

Wells Fargo counters that several of its employee witnesses are in Iowa, as are many relevant documents, and the physical presence of certain evidence in Florida does not mandate a transfer. With the advent of photocopying and other technological advances, the location of the documentary evidence is given little weight in the transfer analysis. *See American Std., Inc. v. Bendix Corp.*, 487 F.Supp. 254, 264 (W.D.Mo.1980). Wells Fargo claims that any examination of the equipment, if necessary, would most likely be done by an expert and introduced via his or her testimony. The Magic has already submitted the affidavit of one such expert attesting to the nonconforming nature of the equipment delivered. *See Estate of Rick v. Stevens*, 145 F.Supp.2d 1026, 1038 (N.D.Iowa 2001) (finding location of accident scene did not warrant transfer of wrongful death action as it is rarely necessary to view the premises of the event).

The most compelling argument for transfer concerns the availability of the DTS witnesses. The Magic claims these witnesses will be unwilling to be deposed or submit to the jurisdiction of the Iowa courts. However, The Magic has not demonstrated that this evidence is unavailable. It has not discussed beyond argument if and how alternative means of procuring their testimony may be available during the discovery process, nor the nature of any adverse impact of eventually reading deposition testimony into the record or conducting a videotaped deposition that can be played in court in a bench trial. *Terra Int'l, Inc.*, 922 F.Supp. at 1360–61.

The presence of a valid forum selection clause is a central and important factor weighing against transfer. When the lease was entered into, it was entirely foreseeable that the machines, The Magic employees, and other evidence for any possible future legation would be located in Florida. A problem with the conduct of a local vendor was also foreseeable. None-

theless, The Magic entered into the lease agreement, which included a consideration of where Wells Fargo would have to litigate lease disputes. The Magic has not demonstrated an inability to seek discovery in Florida, only that it is a bit more cumbersome, a problem that was foreseeable at the time it entered into the lease. Wells Fargo is entitled to its choice of forum and the benefit of its bargain. The convenience of the parties and the interest of justice do not require transfer to Florida.

## IV. WAIVER OF CLAIMS AGAINST WELLS FARGO

Wells Fargo claims that the alleged fraudulent actions of DTS cannot form the basis of any claim or defense in this case because in the lease agreement The Magic waived the right to assert claims involving the vendor in actions against Wells Fargo. Essentially, it argues that this is a straightforward contract collection action, and if the actions of DTS improperly caused The Magic to be liable to Wells Fargo, then The Magic should file suit against DTS, in Florida, to settle that dispute.

The Magic claims Lorisse Garcia's signature on the Delivery and Acceptance Certificate was forged and that the dates are inconsistent because the acceptance certificate is dated September 11, 2003, when the first equipment was actually delivered September 23, 2003. In addition, two versions of the attachment to the lease agreement provided in the appendix to the Motion, Resistance, and Reply clearly show different equipment information, and the signatures of Ms. Garcia are placed differently. Wells Fargo has not responded to the timing argument but points to the signed Delivery and Acceptance Certificate as proof that The Magic accepted the equipment. The Magic states that "any claimed acceptance of the items delivered was manipulated and fabricated by DTS."

Because the forum selection clause in this lease is adequate to confer personal jurisdiction and venue in this court, and because the balance of convenience and justice does not require transfer, this court has jurisdiction over this case and need not determine the validity of the execution of the Delivery and Acceptance Certificate or whether The Magic waived its right to assert claims involving the actions of DTS. Such issues may form the basis for a defense in the present case or the basis of another action, but their resolution is not necessary to decide the narrow issue of jurisdiction and venue currently before the Court. The Court expresses no opinion in this order as to the merits of any claims The Magic may later assert against Wells Fargo or DTS, nor does it now make any finding as to whether those claims would be barred by the waiver provisions of the lease agreement.

## CONCLUSION

The equipment lease contains a valid forum selection clause that is the product of arm's length negotiation between two sophisticated parties in the absence of fraud or coercion. The clause is adequate to confer personal jurisdiction and venue in this court. The balance of convenience and justice does not require transfer to the Middle District of Florida. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or Lack of Venue, or in the Alternative, Motion for Transfer (Clerk's No. 8) must be **denied**.

**IT IS SO ORDERED.**