**AQUA–CARE MARKETING LLC., dba Aqua–Care USA, Plaintiff,**

v.

**HYDRO SYSTEMS, INC., Defendant.**

No. 4:15–cv–00020.

United States District Court,
S.D. Iowa,
Central Division.

Signed April 20, 2015.

Bruce H. Stoltze, Stoltze & Updegraff PLC, Des Moines, IA, for Plaintiff.

Samuel Luke Craven, Bernard L. Spaeth, Jr., Whitfield & Eddy PLC, Des Moines, IA, for Defendant.

## ORDER

ROBERT W. PRATT, District Judge.

Before the Court is a Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Motion") filed by Defendant Hydro Systems, Inc. ("Hydro Systems") on February 27, 2015. Clerk's No. 7. Plaintiff Aqua–Care Marketing LLC., dba Aqua–Care USA ("Aqua–Care") filed a resistance to the Motion on March 16, 2015. Clerk's No. 8. Hydro Systems replied on March 26, 2015. Clerk's No. 9. The matter is fully submitted.[1]

1. The Court notes that the parties requested oral argument, but upon review of the Motion and submissions of both parties, the Court

## I. FACTUAL AND PROCEDURAL BACKGROUND

Aqua–Care is an Iowa company in the business of selling and installing walk-in bathtubs and showers for public consumers. Clerk's No. 1–1 ¶¶ 2, 5 (Compl.). Hydro Systems is a California company in the business of manufacturing and selling walk-in bathtubs. *Id.* ¶¶ 3, 6. In approximately March 2014, Troy Kaup ("Kaup"), a Hydro Systems' sales representative based in Omaha, Nebraska, contacted Mike Pagano ("Pagano"), an Aqua–Care consultant, at Pagano's Grimes, Iowa office about the possible sale of walk-in bathtubs from Hydro Systems to Aqua–Care. Clerk's No. 8–2 ¶¶ 7–11. According to Pagano, several Hydro Systems' employees contacted him at his Grimes office during the negotiation for the sale, and Kaup met with Pagano at the Grimes office in person. *Id.* ¶¶ 9–10. Employees of Aqua–Care also visited Hydro Systems' facilities in California. *Id.* ¶ 8. On April 24, 2014, Hydro Systems sent Pagano a letter ("the April letter") stating:

> You have agreed to an initial purchase order to Hydro Systems Inc. for a quantity of 100 walk in tubs at a price of $2,550.00 each. Upon approval of the sample, your purchase order will be released for shipment. The price of $2,550.00 will include freight and shipment to either warehouse located in Grimes, IA or Charlotte, NC.
>
> Details Outlined:
>
> *Aqua–Care USA will provide purchase order Qty. 100 for a price of $2,550.00
>
> *Upon approval of the sample
>
> *Product will be shipped full freight allowed to either Grimes, IA or Charlotte, NC location.

Clerk's No. 8–3. In early May 2014, Hydro Systems sent two walk-in bathtubs to Aqua–Care in Grimes as a sample for Aqua–Care's approval. Clerk's No. 9–2 ¶ 5. The parties disagree about what happened next. According to Hydro Systems, the freight box was damaged in shipping but the "product ... still functioned as a sample to enable Aqua–Care to assess the overall quality, and Aqua–Care did not request an additional sample." *Id.* According to Aqua–Care, the samples "were damaged while being delivered, to the extent they could not be used for any purpose. (including the intended purpose of testing and inspection for approval.)" Clerk's No. 8–2 ¶ 15.

Despite the sample dispute, Hydro Systems and Aqua–Care executed a Purchase Agreement on May 30, 2014, in Grimes. Clerk's Nos. 8–2 ¶ 13, 9–2 ¶ 6. The Purchase Agreement calls for the sale of 100 walk-in bathtubs of various colors at a price of $2,550.00 each. Clerk's No. 7–4 at 1. The Purchase Agreement does not reference the April letter, nor does it mention that the deal is contingent upon Aqua–Care's approval of a sample bathtub. *See id.* at 1–2. The Purchase Agreement contains no forum selection clause. *See id.* On June 3, 2014, Michelle Pagano, an employee of Aqua–Care, signed a Guaranty; she agreed to take personal responsibility for any debt Aqua–Care owed to Hydro Systems. Clerk's No. 9–2 ¶ 9. The Guaranty provides that "any suit, action or proceeding arising out of or relating to this Guaranty ... shall be instituted in Los Angeles, California." Clerk's No. 9–3. The Guaranty also states that it "shall be governed by, and construed and enforced in accordance with, the laws of the state of California without reference to the choice-of-law principles thereof." *Id.*

Despite Aqua–Care's assertion that it never approved the samples, and thus, according to Aqua–Care, the Purchase Agreement never became binding, Hydro

finds that oral argument would not aid in the resolution of the Motion. *See* Local Rule 7(c).

Systems shipped 22 bathtubs to Aqua–Care's Grimes office around August 1, 2014. Clerk's Nos. 9–2 ¶ 13, 8–2 ¶¶ 15–17. Aqua–Care contacted Kaup, who informed Aqua–Care that the bathtubs had been shipped by mistake. Clerk's No. 8–2 ¶ 17. It was decided that Aqua–Care would maintain possession of the bathtubs and test some of them to determine if they were acceptable. *Id.* Aqua–Care found that the bathtubs contained numerous defects, and communicated several concerns to Hydro Systems in early October 2014. *See* Clerk's No. 8–4. Aqua–Care also sought a more comprehensive warranty from Hydro Systems due to the alleged defects. Clerk's No. 9–2 ¶ 15. Around October 24, 2014, based on concerns over the bathtub defects and Hydro Systems' unwillingness to provide a more comprehensive warranty, Aqua–Care informed Hydro Systems that it was not moving forward with the purchase and requested that Hydro Systems arrange to pick up the bathtubs that had been delivered to Grimes. Clerk's No. 8–5. At some point, Hydro Systems' employees traveled to Grimes to perform repairs and adjustments to all 22 bathtubs; the bathtubs still remain in Aqua–Care's possession in Iowa. Clerk's No. 8–2 ¶ 23. Hydro Systems has purportedly manufactured an additional 54 bathtubs pursuant to the Purchase Agreement, which remain in California. Clerk's No. 9–2 ¶ 16.

Aqua–Care filed this lawsuit against Hydro Systems on December 15, 2014, in the District Court of Polk County, Iowa. *See* Clerk's No. 1–1. Aqua–Care seeks declaratory judgment "as to and of the contract rights and obligations" of the parties, "and such other legal rights, under the alleged agreements between ... the parties and seeking ancillary redress relief, to include damages, and other relief, in relation to the involved alleged purchase and the warranty contracts and as to other violations of law by Defendant Hydro Systems." *Id.*

at 1. Hydro Systems removed the case to this Court on January 20, 2015, based on the existence of diversity jurisdiction under 28 U.S.C. § 1332(a). Clerk's No. 1 at 2. On February 27, 2015, Hydro Systems filed the present Motion under 28 U.S.C. § 1404(a), seeking to transfer this case to the United States District Court for the Central District of California. *See* Clerk's No. 7.

Hydro Systems also filed a lawsuit on December 15, 2014, in the Central District of California. Clerk's No. 7–3. Hydro Systems' lawsuit names both Aqua–Care and Michelle Pagano as Defendants and asserts claims for: (1) breach of the Purchase Agreement; (2) accounts stated; (3) breach of the implied covenant of good faith and fair dealing; (4) breach of guaranty; and (5) false advertising. *Id.* at 1. On March 23, 2015, Aqua–Care and Michelle Pagano filed a "Motion to Sever and Stay Guaranty Claim Against Michelle Pagano and Transfer Contract Claims Against Aqua Care Marketing, LLC to the Southern District of Iowa." Clerk's No. 9–4. That motion is still pending.

## II. LAW AND ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." The Court must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). However, the Court is not limited to these factors; deciding a motion to transfer requires "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant

factors." *Id.* Factors the Court should consider include "access to sources of proof and evidence, the governing law, and the possibility of delay if a transfer is granted." *Medicap Pharm., Inc. v. Faidley,* 416 F.Supp.2d 678, 686 (S.D.Iowa 2006). The Court may also consider "practical factors, such as where the case can be tried more efficiently and expeditiously and whether any prejudice will result if a transfer is granted." *Id.* Hydro Systems bears the burden to "make a clear showing that the balance of interests weighs in favor of the proposed transfer, and unless that balance is strongly in favor of the moving party, the plaintiff's choice of forum should not be disturbed." *Id.* (internal quotation omitted).

Hydro Systems first argues that there is an enforceable forum selection clause that should be enforced in this action. *See* Clerk's No. 7–1 at 6. Hydro Systems also argues that even if the forum selection clause does not apply, all of the § 1404(a) factors weigh in favor of transferring the case to California. *See id.* at 9. Although this is a very close case, for the reasons discussed below, the Court disagrees.

### A. The First–Filed Rule

 Neither party argued that the first-filed rule applies in this case, but the Court finds that it is pertinent to the analysis of the Motion. The " 'first-filed' rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Midwest Motor Exp., Inc. v. Cent. States Se.,* 70 F.3d 1014, 1017 (8th Cir.1995) (quotation omitted). According

to electronic court records, both this case and Hydro Systems' case in the Central District of California were filed on December 15, 2014. Clerk's Nos. 7–2 at 1, 7–3 at 1. Aqua–Care filed its declaratory judgment action first, at 10:43 AM (Central Standard Time) in the Polk County District Court. Clerk's No. 7–2 at 1. Hydro Systems filed its lawsuit at 4:06 PM (Pacific Standard Time). *See Hydro Sys. Inc. v. Aqua–Care USA et al.,* 2:14–cv–09595–SJO (C.D.Cal. Dec. 15, 2014). Jurisdiction has not been challenged in either case; for purposes of this analysis the Court assumes that both courts have jurisdiction over both parties. The cases are parallel because they arise out of a common set of facts and involve essentially the same parties and the same central issues.[2] *See Williams v. Sec. Nat. Bank,* 314 F.Supp.2d 886, 899 (N.D.Iowa 2004) (identifying the various standards used to determine if cases are parallel).

 "The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488–89 (8th Cir. 1990) (internal quotations and citations omitted). But, because the cases were filed on the same day only hours apart, the fact that Aqua–Care was the first-to-file is not outcome determinative. *See Terra Int'l, Inc. v. Miss. Chem. Corp.,* 922 F.Supp. 1334 (N.D.Iowa 1996), *aff'd* 119 F.3d 688 (8th Cir.1997), *cert. denied,* 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (Dec. 15, 1997). In *Terra International,* the court extensively discussed case law involving complaints filed at nearly the

---

**2.** Hydro Systems' case in California does contain a claim for false advertising under the California Business and Professions Code that is not present in this case. But the Court finds that to be a peripheral issue, while the central issue in this case is the contract dispute. Indeed, Hydro Systems did not argue

that the existence of the false advertising claim weighed in favor of transfer, nor did it argue that it would be unable to bring a similar claim in this Court. In fact, Hydro Systems referred to the California case and this case as "parallel actions" in its brief in support of the Motion. Clerk's No. 7–1 at 11.

same time, and concluded that a "dead heat" should "counsel the court to avoid a slavish adherence to the first-filed rule, or its mechanical operation, and remind the court to examine other considerations besides temporal priority to see if compelling circumstances dictate a departure from the rule." *Id.*, 922 F.Supp. at 1353 (internal quotations and citations omitted). The court clarified that:

> This conclusion does not eviscerate the first-filed rule, because the rule is still applicable unless other 'compelling circumstances' can be presented requiring a departure from the rule. Thus, the rule is more than a 'starting place' for the analysis, but instead states a rebuttable presumption that the first-filed suit should have priority.

*Id.*, n. 3. The holding in *Terra International* comports with the well-known proposition that the "[first-filed] rule is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice." *Rural Med. Grp., Inc. v. Performance One Media, LLC*, 697 F.Supp.2d 1097, 1112 (D.Neb.2010) (internal quotation omitted). Accordingly, the Court takes into consideration Aqua–Care's first-filed status, but continues with a full analysis of the applicable law regarding transfer. For the reasons discussed below, the Court finds no "compelling circumstances" in this case that dictate a departure from the first-filed rule.

### B. *Convenience of the Parties*

■ Hydro Systems argues that trying the case in California would not burden Aqua–Care because representatives from Aqua–Care already traveled to California before signing the Purchase Agreement, and would need to travel to California again to defend against Hydro Systems' lawsuit. *Id.* at 9. While Hydro Systems' assertions are true, the same could be said of litigating the case in Iowa. Hydro Systems' representatives have already traveled here, and would need to travel to Iowa to defend this lawsuit. It is inescapable that one of the parties will have to suffer some inconvenience in either venue. But the plaintiff's choice of forum is to be given "paramount consideration." *Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.*, 431 F.Supp.2d 955, 966 (S.D.Iowa 2006) (internal quotation omitted). And "merely shifting the inconvenience from one side to the other ... is not a permissible justification for a change of venue." *Id.* (internal quotation omitted). Here, transferring the venue to California would merely shift Hydro Systems' inconvenience to Aqua–Care. Hydro Systems has not demonstrated that California would be a more convenient place for the parties to litigate this case. Thus, this factor weighs in favor of denying the motion to transfer.

### C. *Convenience of the Witnesses*

■ When examining the convenience of witnesses, the Court examines the materiality and importance of anticipated witness testimony and determines the witnesses' accessibility and convenience to the forum. *High Plains Constr., Inc. v. Gay*, 831 F.Supp.2d 1089, 1103 (S.D.Iowa 2011). "[T]he party seeking the transfer must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Hammann v. 1–800 Ideas.com, Inc.*, 455 F.Supp.2d 942, 962 (D.Minn.2006) (quotation omitted). Hydro Systems argues that California is a more convenient venue for "the majority of the witnesses." Clerk's No. 7–1 at 10. Specifically, Hydro Systems argues that the employees who designed and manufactured the bathtubs, as well as evidence supporting their testimony, are all located in California. *Id.* Hydro Systems asserts that Aqua–Care has "made the design and manufacture of the tubs a focus of their pleadings." Clerk's

No. 9 at 2. On the other hand, Aqua–Care argues that Iowa has a "substantial preference" for witness convenience because Kaup, Hydro Systems' local sales agent, the crews who installed the bathtubs, and the customers who purchased the bathtubs are all located in or near Iowa.[3] Clerk's No. 8–1 at 9. Aqua–Care also argues that the California court lacks subpoena power over the witnesses in Iowa. *Id.* at 10.

Witnesses will be needed to resolve two main issues in this case: (1) whether the Purchase Agreement constituted a valid and binding contract in light of Aqua–Care's allegation that it never approved a sample from Hydro Systems as required by the April letter; and (2) whether either party breached any existing contract obligation or warranty obligation. *See* Clerk's No. 1–1 at 5 (Compl.). Determining whether a contract exists will consist mainly of testimony from the parties or agents of the parties and documentary evidence that does not heavily sway the analysis in favor of either Iowa or California. *See Hawley v. Accor N. Am., Inc.*, 552 F.Supp.2d 256, 260 (D.Conn.2008) (explaining that the ability to compel witness testimony in a given venue "is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship") (internal quotation omitted); *Wells Fargo Fin. Leasing, Inc.*, 431 F.Supp.2d at 961 (explaining that documentary evidence can be easily copied and provided to courts in different districts).

The second determination necessarily involves an examination of the bathtubs that Hydro Systems shipped to Aqua–Care in Iowa. While it is true that these bathtubs were designed and manufactured in California, they are now physically located in Iowa. Any expert-witness examination of the bathtubs will be done in this state. While witnesses from California involved in the manufacturing process may need to testify, those witnesses are likely employees of Hydro Systems. Hydro Systems has not met its burden of showing that the convenience of key witnesses necessitates a transfer of this case to California. Indeed, Hydro Systems has not named a single *specific* witness that it claims will be inconvenienced by litigating this case in Iowa. *See Hammann*, 455 F.Supp.2d at 962 (stating that the party seeking transfer must "clearly specify" the witnesses to be called).

**D. *Interests of Justice***

In determining whether the interests of justice favor a transfer of venue, the Court should consider:

(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Terra Int'l, Inc.*, 119 F.3d at 696.

The third, fourth, and fifth factors do not weigh for or against transfer. In either state, one of the parties will have additional costs to defend a lawsuit outside of its home state. Neither party has identified any obstacle to enforcing a judgment in either Iowa or California, nor are there any obstacles to a fair trial in either jurisdiction.

As to factor six, Iowa law applies to the parties' contract dispute. Iowa utilizes the Restatement (Second) of Conflict of Laws § 188, which provides that "[t]he rights

---

**3.** According to Pagano, the defects with Hydro Systems' bathtubs were discovered when Aqua–Care installed one of them in a Des Moines customer's home. Clerk's No. 8–2 at 3.

and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties." *See Linden v. CNH Am. LLC,* 753 F.Supp.2d 870, 874 (S.D.Iowa 2010) ("Iowa has adopted the Restatement (Second) of Conflict of Laws "most significant relationship" methodology for choice-of-law issues."). The Court should consider: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflicts of Laws § 188(2)(a)-(e) (1971). "If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." *Id.,* § 188(3). The alleged contract here was negotiated in Iowa, signed in Iowa, and performance was to take place in Iowa. The allegedly faulty bathtubs that Hydro Systems shipped to Aqua–Care are in Iowa. Thus, Iowa has the most significant relationship to the case and Iowa law would control the outcome of this contract dispute. The weight of this factor is slightly lessened because a transferee court must apply the law of the transferor court; thus, Iowa law would apply even if this case were transferred to California. *See Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ("[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."). In addition, the case is a relatively straightforward contract dispute and does not involve complex or unique areas of state law, making it easier for the California court to apply Iowa law. However, this Court has an interest in resolving disputes that involve Iowa businesses and citizens, particularly where Hydro Systems actively solicited business in this state. Further, as to factor seven, there is a preference for local courts to apply their own law, rather than have that law interpreted by another jurisdiction. *See Huggins v. Stryker Corp.,* 932 F.Supp.2d 972, 984 (D.Minn.2013) (explaining that while it is possible for courts to apply the law of other jurisdictions, "it is preferable for local courts to determine issues of local law"). Accordingly, factors six and seven weigh slightly in favor of denying the Motion.

Factor one, judicial economy, is perhaps the most important in light of Hydro Systems' parallel lawsuit against Aqua–Care in the Central District of California. The Court agrees with Hydro Systems that "[i]t makes no sense to have two cases, involving the same facts and issues, litigated simultaneously in two separate forums." Hydro Systems argues that a transfer to California would promote judicial economy "based largely on the fact that there are currently two parallel actions taking place in two separate jurisdictions, and those actions both arise out of the very same Purchase Agreement." Clerk's No. 7–1 at 11. Hydro Systems' argument seems to be based on the fact that the Guaranty is governed by California law, thus "the California Court is in a better position to decide the issues of the case pursuant to [California law]." *Id.* Hydro Systems argues that the Guaranty "directly related to a Purchase Agreement executed by all parties to this action[,]" thus, "the parties to this action agreed to make California the venue for all disputes arising out of the Purchase Agreement." Clerk's No. 7–1 at 7–8.

Aqua–Care disputes that the forum selection clause applies in this case because it was not a party to the Guaranty, nor is Michelle Pagano a party to this action.

Clerk's No. 8–1 at 7–8. The Court agrees. There is no forum selection clause in the Purchase Agreement executed between Aqua–Care and Hydro Systems. That agreement forms the basis for this lawsuit. Although the Guaranty no doubt directly relates to the Purchase Agreement, the two documents were not signed at the same time, or by the same individuals. Nor is there any evidence in the record indicating any kind of agreement between the parties to apply the Guaranty's forum selection clause to disputes arising under the Purchase Agreement. Thus, despite Hydro Systems' argument to the contrary, Aqua–Care's choice of forum (the second factor) is entitled to its due deference. *See Wells Fargo Fin. Leasing, Inc.*, 431 F.Supp.2d at 966 (emphasizing the importance of the plaintiff's choice of forum). The fact that any dispute over the Guaranty will likely have to be litigated in California is by far the most compelling argument for transfer given that judicial economy favors all disputes of the parties being resolved in the same action in the same forum. But, whether Aqua–Care has any monetary obligation to Hydro Systems, and thus whether the necessity to enforce the Guaranty would come to fruition, is very much in dispute. It is appropriate for the merits of this case to be litigated in Iowa, where the contract was negotiated and signed, where performance of the contract was to take place, and where the physical evidence exists. All issues of liability and monetary damages will be decided in this case, and therefore, should Hydro Systems need to enforce the Guaranty in California, the process should not be unduly burdensome to either party. The Court has reviewed the filings in the California case, and no further progress has been made in that case. Thus, any concerns about the use of judicial resources or burdens on either party to litigate in two states are unfounded. That case may be transferred here, or Hydro Systems may

file counterclaims in this suit. Hydro Systems has not shown that the interests of justice require a transfer to California.

### E. *Other Factors*

Other factors the Court should consider, many of which overlap with the analysis above, include access to sources of proof, governing law, the possibility of delay if the case is transferred, which venue can try the case more efficiently and expeditiously, and whether prejudice will result from a transfer. *See Medicap Pharm., Inc.*, 416 F.Supp.2d at 686. Access to sources of proof, governing law, and efficiency all favor denial of the Motion to transfer. Hydro Systems argues that California is a more convenient location for the parties because the bathtubs in dispute were designed and manufactured in California, thereby making that state the "logical choice for access to sources of proof and evidence." Clerk's No. 7–1 at 10. But the sources of proof and evidence specifically relevant to this dispute exist here in Iowa. The Purchase Agreement was negotiated and executed in Iowa, and the allegedly defective bathtubs that led to the collapse of this agreement remain in Iowa. In addition, Hydro Systems' assertion that it manufactured several bathtubs for Aqua–Care that remain in California is largely irrelevant as only the condition of the bathtubs that were shipped to Iowa are material to resolving the parties' rights and obligations. The Court has already noted that Iowa law applies to the contract dispute. As to efficiency and expeditiousness, the Court agrees with Aqua–Care that the case can likely be tried more efficiently and expeditiously here due to the location of the witnesses and the physical evidence involved in the case.

The remaining factors do not weigh against transfer, but neither do they provide compelling circumstances to transfer the case. There is no apparent possibility

of delay if the case was transferred to California, as parallel litigation is already underway. In addition, the Court can identify no specific prejudice that Aqua–Care would incur beyond the inconveniences of litigating out of state.

### III. CONCLUSION

Overall, while Hydro Systems has presented meritorious arguments for transfer of this case, the Court does not find that Hydro Systems has met its burden to show that the balance of interests weighs in favor of transfer. Nor does the Court find that any of the arguments present "compelling circumstances" that require a departure from the first-filed rule. Here, where there are parallel actions filed merely hours apart, and the arguments for venue in both courts are persuasive, the first-filed rule is perhaps the only way to equitably decide where the case should be tried, particularly where there has been no accusation by either party that the other was forum-shopping or filed its lawsuit in bad faith.[4] *See Horn & Hardart Co. v. Burger King Corp.*, 476 F.Supp. 1058, 1061 (S.D.N.Y.1979) (applying the first-filed rule where the two cases were filed only hours apart and noting the absence of bad faith). In this situation, it is proper for the Court with the first-filed lawsuit to determine which venue is proper, and enjoin the parallel action. *See Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir.1993) (concluding that the District Court of Minnesota did not abuse its discretion by applying the first-filed rule and enjoining the defendant from proceeding with its parallel litigation in a different state); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 844 (9th Cir.1986) (concluding that a Montana district court did not abuse its discretion by enjoining a second-filed parallel action in Illinois); *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1164 (10th Cir.1982) ("[T]he court which first obtains jurisdiction should be allowed to first decide issues of venue."); *Ontel Prod., Inc. v. Project Strategies Corp.*, 899 F.Supp. 1144, 1155 (S.D.N.Y.1995) (denying a motion to transfer venue and enjoining the parties from prosecuting a parallel action in the District of New Jersey).

For all the foregoing reasons, Defendant's Motion to Transfer (Clerk's No. 7) is DENIED. With the exception of claims arising under the Guaranty, the parties are enjoined from continuing to litigate this dispute in California.[5]

IT IS SO ORDERED.

---

**4.** The Court is sensitive to the fact that, in some circumstances, suits for declaratory judgment are filed in bad faith to prevent the proper plaintiff from litigating a dispute in its chosen forum. *See Brower v. Flint Ink Corp.*, 865 F.Supp. 564, 571 (N.D.Iowa 1994) ("The Court should not allow this type of forum shopping in the form of anticipatory, declaratory judgment suits.") (quotation omitted). But there is no evidence that Aqua–Care filed this suit in bad faith—the record reflects that Aqua–Care had legitimate reasons for filing the action since it believes no contract was actually formed between the parties. It is also significant that neither party has raised claims of bad faith against the other. Accordingly, the fact that this case is a suit for declaratory judgment does not compel transfer. *See id.* at 572 (explaining that the first-filed rule does not disfavor declaratory actions, but rather actions brought purely in anticipation of another action).

**5.** The parties shall not be prevented from resolving Aqua–Care's pending motion in the Central District of California, or taking any steps necessary to terminate the remaining claims in that case.